SAMUEL H. RICE, APPELLANT, V. LINCOLN & NORTHWESTERN RAILROAD COMPANY ET AL., APPELLEES.

FILED JANUARY 9, 1911.    No. 16,211.

1. **Vendor and Purchaser:** LAND CONTRACT: CONSTRUCTION. A contract to convey a specified tract of land for a certain purpose, for a specified price, with an option to the purchaser to take additional land at the same price if found to be necessary for said purpose, one dollar of said purchase price being advanced at the making of the contract as earnest money, is not completed by accepting a deed of the specified land and paying the remainder of the purchase price, so as to rescind the option provided for in the contract; the time specified for exercising the option not having then expired.

2. **Contracts:** CONSTRUCTION. Punctuation marks in a contract will not be allowed, in a court of equity, to give the contract an unconscionable and inequitable meaning.

3. ———: ———. Equity will not construe doubtful language in a contract so as to defeat the contract as in violation of the law against perpetuities, if it is reasonably susceptible of a construction that will validate the contract.

4. **Specific Performance:** CONTRACT FOR RIGHT OF WAY. When a railroad company needs land for the construction and operation of its road, it is contemplated by the statute that the parties will

agree as to the land to be taken and the compensation to be paid therefor, and a contract made upon such agreement will be enforced specifically unless manifestly inequitable. The fact that the statute provides a complete remedy for the railroad company when the parties are unable to agree may be taken into consideration with evidence tending to show that a contract for that purpose is inequitable and unconscionable.

5. ———: INEQUITABLE CONTRACTS. In an action to specifically enforce a contract to convey real estate, if the court is satisfied from the evidence that the result of enforcing it would be so burdensome and injurious to the defendant that it could not have been reasonably intended by the parties as the effect of the agreement, it will not be specifically enforced.

6. ———: ———. The evidence showing the circumstances of the making of the contract, and the results of a literal enforcement, is examined, and it is found that the legal effect of the contract with the construction contended for would be too inequitable and unconscionable to be enforced by a court of equity.

APPEAL from the district court for Seward county: GEORGE F. CORCORAN, JUDGE. *Reversed.*

R. P. Anderson, J. J. Thomas and Edwin Vail, for appellant.

J. E. Kelby, R. S. Norval and F. E. Bishop, contra.

SEDGWICK, J.

The plaintiff is the owner of certain real estate in Seward county, and began this action in the district court for that county to recover damages which he alleged he had sustained by reason of the wrongful act of the defendants upon and in relation to the said real estate. The defendants for answer and counterclaim alleged that the plaintiff had before that time contracted to sell and convey the real estate in question to the defendant, the Lincoln & Northwestern Railroad Company, upon certain conditions and terms which had all been complied with, and had afterwards refused to convey the same in accordance with his contract, and asked for a specific performance of the

contract. The defendants also asked that the issue tendered by the counterclaim be first tried by the court without a jury. The court thereupon determined that the issue tendered by the answer and counterclaim should be first tried, and upon such trial found the issues in favor of defendants and entered a decree for the specific performance of the contract alleged by the defendants. The plaintiff has appealed.

It appears that plaintiff was the owner of the S. E. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$ of section 4, in township 9 N., of range 4 E., in Seward county. The railroad company was about to construct a line of road along the north side of this tract of land, and on the 10th day of May, 1906, entered into the following contract with the plaintiff: "Contract for Right of Way. For the consideration of the sum of one dollar to $\frac{me}{us}$ in hand paid, I, S. H. Rice, a single man, of Seward county and state of Nebraska, hereby covenant to and with the Lincoln & Northwestern Railroad Company that I will convey by good and sufficient deed, unincumbered, the right of way for the railroad of said company, all that part of the S. E. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$ of sec. 4-9-4-E, lying and being north of a line drawn 75 feet from and parallel to on the south side of the center line of said railroad as now located on and across said land. We further agree that said company may proceed in the construction of said road over said land, and we will sell to the said railroad company such additional right of way as they may require at the rate of $60 dollars per acre, with the privilege of changing any watercourse necessary in the construction of said road, and the right to build and maintain a snow fence for the term of five months each year at any point where said snow fence may be deemed necessary within two hundred feet of either side of its right of way on said described land beginning November 15th and ending April 15th of each succeeding year; and I agree to settle all damage to tenant on account of his leasehold. Provided, that said railroad company shall during the years 1906 and 1907 construct its said railroad

from on said land to.............and pay the said S. H.
Rice the sum of $150, then this obligation shall be
of force and virtue in law; but if said company shall
neglect or refuse to pay the said sum within 1 month
from date, then either party may have the damages for
right of way assessed as provided by law. Witness our
hands hereto this 10th day of May, A. D. 1906. S. H. Rice.
Witness: J. M. Saxton." (Indorsed) "S. H. Rice. Pd.
5-24-06. Draft 786. Pt. of S. E. ¼ S. W. ¼ Sec. 4-9-4-E."

During the years of 1906 and 1907 the railroad company
constructed its railroad, using the tract of land described
in the contract. On the 6th of September, 1907, the com-
pany served upon the plaintiff a demand in writing to
convey to the company a strip of said land 65 feet wide
and about 400 feet long adjoining on the south the strip
of land described and specified in the said contract which
the plaintiff had already conveyed to the company pur-
suant to the contract. With this written demand the com-
pany tendered $36 as the price of said land at $60 per
acre, as stated in the contract, and also tendered a draft
of a deed of the land demanded to be executed to the
company from the plaintiff.

1. The first contention of the plaintiff is that, when
the original right of way deed was executed by him to the
company, any supposed claim that the company might
have by virtue of the contract for the option to purchase
more land was rescinded by the parties. The considera-
tion of $1 named in the contract was paid by the company
to the plaintiff at the time that the contract was executed,
and, when the deed of right of way specified in the con-
tract was executed by the plaintiff to the company, the
amount specified in the contract as the purchase price of
the land, $150, was paid by the company to the plaintiff,
and the $1 which had been paid by the company at the
time of the execution of the contract was returned by
the plaintiff to the company. This transaction, it was
urged, operated as a completion of the contract, and no
consideration remained for the option which the company

is now claiming. We do not think that this transaction will admit of such a construction. The consideration for the contract entered into by the parties was the purchase by the company of the tract of land described and specified in the contract and the payment of $150 therefor. This would be a sufficient consideration for all the agreements of either party in the contract. The $1 was advanced as a part of the $150, and, when the deed was executed, the plaintiff was entitled to the remainder of $149. He was paid by a check which had been prepared by the company and which called for $150, and he therefore returned the $1. This transaction therefore cannot be considered an abandonment of any of the terms of the contract by either party.

2. The second proposition of the plaintiff as stated in the brief is as follows: "The said contract, assuming it to be otherwise valid, was void so far as it sought to bestow upon the railroad company the option to purchase additional lands, because it violated the rule against perpetuities." It appears to be conceded by the company that if the exercise of its option to purchase was not limited as to time, and the contract had by express terms been extended to the "heirs, executors, administrators and assigns and the owner or owners for the time being of the lands conveyed and all persons who should and might be interested therein," it would violate the rule against perpetuities. The company contends that it does not violate this rule for two reasons: The contract by its terms is personal to this plaintiff only, and it is limited in time to the construction of the railroad which again in express terms is limited to the two years named in the contract.

The contention that the contract was personal to the plaintiff and did not run with the land, and is therefore limited to the life of the plaintiff, is confidently presented in the brief. Our statute provides: "In the construction of every instrument creating or conveying, or authorizing or requiring the creation or conveyance of any real estate, or interest therein, it shall be the duty of the courts of

justice to carry into effect the true interest (intent) of the parties, so far as such intent can be collected from the whole instrument, and so far as such intent is consistent with the rules of law." Comp. St. 1909, ch. 73, sec. 53. It has been held that covenants in a deed of a party in possession of land run with the land when the deed names the grantee personally with no other words. In the view that we take of the second proposition of defendant upon this point, it is not necessary to determine whether the true construction of this contract is that the deed given pursuant thereto should contain covenants running with the land.

The second proposition of defendant on this point, that the contract should be construed to limit the exercise of the option to the time of the construction of the road, we think is right. "We further agree that said company may proceed in the construction of said road over said land, and we will sell to the said railroad company such additional right of way as they may require at the rate of $60 dollars per acre, with the privilege of changing any water-course necessary in the construction of said road." By the first paragraph of the contract plaintiff agreed to convey "the right of way for the railroad of said company." The company was to "proceed with the construction of said road over said land," and might need for that purpose "additional right of way." The evidence shows that orchard, farm buildings and other valuable improvements are located so near to the right of way that, if this contract should be construed to mean that after the road was completed the company might take such part of the farm as it saw fit, it would be too unconscionable to be enforced in a court of equity. Punctuation marks in a contract will not be allowed, in a court of equity, to give the contract an unconscionable and inequitable meaning. If this contract were written with the clause "with the privilege of changing any watercourse necessary" in parentheses, it would perhaps be patent to all that the words following, "in the construction of said road," limit the words, "as

they may require." The agreement is that, if the company should require "additional right of way * * * in the construction of said road," plaintiff shall convey it and be paid therefor at $60 per acre. The exercise of the option, then, was limited to the two years in which the construction was to be completed, and the rule against perpetuities is not violated.

3. The third contention of the plaintiff, that the defendants have an adequate remedy at law independently of the contract, is perhaps of importance in connection with the general equities of the case. It was, of course, proper and desirable that the parties adjust the matter by an agreement between them, and a contract for that purpose, otherwise unobjectionable, might be enforced  The statute, however, contemplates that without a contract between the parties the company can obtain such land as it needs for the proper maintenance and operation of the road through the simple method pointed out by the statute and without unnecessary litigation.

4. The fourth objection that the plaintiff makes to this decree is that "it would be inequitable to enforce specific performance of this contract." We think this objection is well taken.  Mr. Hoagland, who was the company's engineer, was a witness for the defendant, and testified quite at length as to the construction of the road and the necessity of this additional land in that construction. As the engineer for the company it devolved upon him to determine what land was needed by the company in the construction of the road.  He says that it was first decided that 150 feet of right of way was needed, and if in practice it was found that more was needed it was intended to obtain it later.  When the improvement was begun, Middle Creek, which was very irregular in that locality, crossed the right of way opposite the land in question three times, running in a general direction from south to north.  The public highway was north of the right of way.  A new channel was cut straightening the creek so that it would cross the right of way but once.  It

was necessary to fill in the bed of the old channel where it formerly crossed the right of way. This channel was at some points as much as 36 feet below the required grade. The creek where this filling was done had been fed by springs, and it was necessary to place tiling to carry off the water. On the south side the base of the fill extended to within about 25 feet of the south line of the original right of way. The engineer stated that at one point it was within 23 feet, and Mr. Rice testified that it was 25 feet at the nearest point. The public road was changed to the south side of the right of way, passing under the railroad at the point nearly opposite the east line of the plaintiff's land, and then running west along the shelf or "berm" constructed by the company. This shelf or berm was 25 feet wide, and was placed by the company along the grade to protect it from surface water, and perhaps for other purposes. The slope of the grade, together with this shelf or berm, extended within about four feet of the south line of the original right of way. The engineer testified that it was necessary that the drainage tiling should extend about 10 feet south of the south line of the right of way, and in maintaining the drain "it would be necessary to take up the tiling and reset them," and that he figured on getting the dirt from the east end of this strip to make a fill which would be necessary in the future, and that additional right of way was required for these and other similar purposes. The plaintiff testified that this additional strip 65 feet wide extended to within 10 feet of his barn and within 12 feet of his house, and takes in both of his granaries and his grove.

It appears from the evidence that, when this contract was made, there was some discussion between the plaintiff and the company's agent as to the probability that any more land would be necessary in the construction of the road; and the plaintiff testified that the company's agent then said, "We might need it for additional trackage or other purposes in connection with building the road." and that he said to the agent, "If that is the case, they will not

put any trackage down there." His understanding was that if the company should put another track there, or some improvement of that kind, they might call upon him for additional right of way. If it is admitted that it is for the company and its engineer to determine how much right of way is necessary for the proper construction, maintenance and operation of the road, still, when we consider what use the company expects to make of this additional land, it seems clear that any one not an expert engineer would not have contemplated that this contract would have involved such serious consequences to the plaintiff's property.

It has been frequently decided by this court that "courts of equity will not always enforce a specific performance of a contract. Such applications are addressed to the sound legal discretion of the court, and the court will be governed, to a great extent, by the facts and merits of each case, as it is presented." *Morgan v. Hardy*, 16 Neb. 427. In *Clarke v. Koenig*, 36 Neb. 572, it is said: "Specific performance is not generally a legal right, but rests in the sound, legal, judicial discretion of the trial court." See, also, *Kofka v. Rosicky*, 41 Neb. 328. In *Hoctor-Johnston Co. v. Billings*, 65 Neb. 214, it appears that the trial court took the evidence in full in regard to the circumstances surrounding the making of the contract, and in the opinion of the court by HOLCOMB, J., this evidence is discussed without regard to the express language of the contract itself, and its force is considered as tending to show that the specific enforcement of the contract would be inequitable. This evidence shows clearly that the plaintiff never contemplated that any such amount of land would be required as is now demanded. The plaintiff was asked how the taking of this amount of land would affect his farm, and upon objection was not allowed to answer. This evidence would have been proper in the case. The case was carefully tried along the line of a rigid enforcement of an express contract. The former decisions of this court would require a more liberal in-

vestigation as to the real equities between the parties. If
the defendant, the Lincoln & Northwestern Railroad Com-
pany, under this contract could take the plaintiff's tim-
ber and his granaries at $60 an acre, it might by the same
construction have extended its demand a few feet farther
so as to take his house and barn also. The said defend-
ant is not without remedy. It can demand such land as
is needed for the proper maintenance of the road; and it
will only be required to pay the plaintiff his actual dam-
ages caused by such taking.

The judgment of the district court is reversed and the
cause remanded for further proceedings.

                                              REVERSED.

FAWCETT, J., concurs in the conclusion.