W. E. KELLY V. EDA TENKOFF WOMACK ET AL

No. A-4346. Decided June 9, 1954.
Rehearing overruled July 7, 1954.
(268 S.W. 2d Series 903)

372

*Turpin, Kerr & Smith* and *Irby L. Dyer,* all of Midland, for petitioner.

The Court of Civil Appeals erred in holding that the trust deeds were void as being violative of the Texas Rule against perpetuities when the deeds created only present, vested legal and beneficial interests in named living persons, and could not have violated the rule against perpetuities which is applicable only where a future estate might not vest during lives in being plus twenty-one years thereafter. Norman v. Jenkins, 73 S.W. 2d 1051, er. ref.; Rust v. Rust, 147 Texas 181, 214 S.W. 2d 462; 70 C.J.S., Perpetuities, 588, par. 11.

*Stubbeman, McRae & Sealy* and *James G. Noland,* all of Midland, *Callaway & Reed* and *O. D. Montgomery,* all of Dallas, for respondent.

On the question of whether the deeds constituted a perpetuity. Powers v. First National Bank of Corsicana, 138 Texas 604, 161

S.W. 2d 273; Moore v. Sellers, 201 S.W. 2d 248, er. ref.; Brooker v. Brooker, 130 Texas 27, 106 S.W. 2d 247.

MR. JUSTICE CULVER delivered the opinion of the Court.

W. E. Kelly filed this suit against Eda Tenkoff Womack et al, respondents, for the title and possession of 400 acres of land in Martin County. H. C. Burnam intervened as a plaintiff. Kelly is the only petitioner here.

Respondents defended on the ground that the deed under which petitioner claimed title from the common source was void because it was contrary to Section 26 of Article I of the Constitution of Texas declaring that perpetuities "are contrary to the genius of a free government and shall never be allowed."

After the parties filed a stipulation of the material facts a take-nothing judgment was rendered in favor of respondents and affirmed by the Court of Civil Appeals. 261 S.W. 2d 599.

On November 10, 1919, Vincent Heisserer executed a deed of an undivided half interest "in consideration of love and affection" and one Dollar conveying to W. H. Heisserer "as trustee, for and on behalf of the following beneficiaries." It named 23 of these and fixed the "interest in said trust estate" to be enjoyed by each in fractions; 1/10 to seven, 1/30 to three, 1/60 to six and 1/70 to seven.[1]

The trustee was authorized to lease, sell, or encumber the land or any part of it and to sign, acknowledge and deliver any lease, mortgage, deed or contract without any liability on the grantee to see that the money paid to the trustee would be devoted to the execution of the trust.

The deed also provided that if W. H. Heisserer, trustee, should die before he had fully disposed of the fee simple title to the land conveyed, then Zeno Heisserer of Missouri, would become trustee with the same authority as had been vested in the deceased trustee.

On July 23, 1930, Frank L. Diebold deeded an undivided half interest in the land described in the Heisserer deed, supra, to Frank Diebold, Jr., and Wm. LeGrand, as trustees for 13 named beneficiaries; 1/10 to 9 of them and 1/40 to 4 of them. Other

---

1.—For example text, see 261 S.W. 2d 599.

terms and conditions were substantially the same as in the Heisserer deed.

All beneficiaries named in the Heisserer deed were "blood relatives" of the grantor. All those named in the Diebold deed were children and grandchildren of the grantor.

After the execution of these deeds each trustee was in active charge and management of a half interest in the land in question, paying annually the taxes thereon and leasing it from time to time for agricultural and grazing purposes and collecting the entire rental income from his half and as trustee each for many years listed the land with local real estate agents for sale, but no satisfactory offer was received until December, 1947, when one Burnam and petitioner Kelly offered to pay $15,000 cash for it. After some negotiation, this offer was accepted. On July 18, 1949, Zeno Heisserer, as successor trustee under the Vincent Heisserer deed, and William LeGrand, survivor under the Diebold deed, conveyed the 400 acres to Burnam and petitioner Kelly by general warranty deed for $15,000 cash, which money is being held in escrow pending final disposition of this suit.

Prior to the execution of this deed no beneficiary under the trust deeds above described had resorted to any litigation to terminate the trust or to establish any legal title in the beneficiaries named in the trust deeds.

In his trial petition Kelly pleaded the conventional terms of trespass to try title. Alternatively he pleaded validity of the trust deeds, in consequence of which the deed executed to him by the trustees conveyed good title.

The application was granted on petitioner's first point, which is that the Court of Civil Appeals erred in holding that the trust deeds are void under the rule against perpetuities because they "create only present vested legal and beneficial interests in named, living persons and therefore could not have violated the rule," which "is applicable only where a future estate might not vest during lives in being plus twenty-one years." We are of the opinion that the point should be sustained.

■ The rule, "as appears by its statement, relates only to the vesting of estates and interests, and not to their duration or ending." And it has no application to present interests, legal or equitable, in reality or personality, whether or not alienable. 70

C.J.S., Perpetuities, p. 584, Sec. 8, Singer v. Singer, 150 Texas 115, 237 S.W. 2d 600.

The generally accepted definition in this state of a perpetuity is:

"A perpetuity is a limitation which takes the subject-matter of the perpetuity out of commerce for a period greater than a life or lives in being and 21 years thereafter, plus the ordinary period of gestation." Neely v. Brogden, Texas Com. App., 239 S.W. 192.

The rule is also defined in 70 C.J.S., Perpetuities, Section 3, as follows:

"The rule against perpetuities, at common law, is that no interest within its scope is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest, * * *."

It seems to be the law in this jurisdiction that the rule has no relationship to restraints on alienation or so-called indestructible trusts. If the deeds violate the rule against perpetuities they are void from the beginning, but that is not true where alienation has merely been restrained or where even a so-called spend-thrift trust has been created. If the terms of the trust create a prohibited restraint, that limitation may be stricken without voiding the effect of the deed. Anderson v. Menefee, Texas Civ. App., 174 S.W. 904, opinion approved by Supreme Court, (error refused, 108 Texas, 592); Rust v. Rust, 211 S.W. 2d 262, 267:

" 'It is immaterial that full possession and enjoyment of the property is postponed beyond the period of a life or lives in being and 21 years thereafter with the ordinary period of gestation added.' "

In Henderson v. Moore, 144 Texas 398, 190 S.W. 2d 800, 802, the bequest was to a class subject to the admission of new-born members and to the exclusion of those who might die under the 25-year period of the trust. "In the meantime," says Chief Justice Alexander, "no one could make title to the property because it could not be known who would ultimately prove to be the beneficiaries. This would take the property devised by the will out of the commerce for the period of twenty-five years, and would be in violation of the rule against perpetuities." We are of the opinion that the beneficial or equitable title vested in the named living

beneficiaries at the time of the execution of the deeds regardless of the attempted restraint on alienation. They had the fixed right of future enjoyment upon the termination of the trust.

On the very face of these instruments there is apparently no intention, express or implied, that the properties are to be taken out of commerce. In fact the trustee was charged with the duty of disposing of the land at his discretion and in his best judgment at the most favorable and opportune time.

■ The requirement of the rule in this respect is complied with when a future estate or interest becomes vested in interest regardless of when it becomes vested in possession. Hunt v. Carroll, Tex. Civ. App., 157 S.W. 2d 429.

Handbook on Law of Future Interest by Lewis M. Simes, 1951, at page 369 has this to say:

"The word 'vest' refers to a vesting in interest and not in possession. It is but an enlargement of the feudal concept of vesting which was applied in determining whether a remainder was vested or contingent for purposes of the destructibility rule."

Similarly, text writers generally maintain that restraint on alienation has no bearing upon the question of whether or not the title has vested. Griswold, Spendthrift Trusts, 2d Ed. 1947, p. 361; also same text, Sec. 280.1.

Respondents insist that irrespective of "the narrow question of vesting," the deeds create indestructible private trusts of indefinite duration. They rely upon Brooker v. Brooker, 130 Texas 27, 106 S.W. 2d 247; Powers v. First National Bank of Corsicana, 138 Texas 604, 161 S.W. 2d 273; Moore v. Sellers, Texas Civ. App., 201 S.W. 2d 248, wr. ref., which they say follow our constitutional mandate against trusts of indefinite duration. We do not think these authorities support this contention. In the Brooker case it was pointed out that upon testator's death the legal title to the trust estate would vest immediately in the trustees, but the equitable or "the real title" to the corpus of the trust estate was left in suspension in such a way that it would not vest until the time provided by the rule against perpetuities had expired. The will stipulated that the estate must be held together and not partitioned until 21 years after the death of the last surviving legatee, and not even then if a majority of the heirs over 21, whoever they might be, should decide otherwise. The latter two cases provided that the funds and properties of

the estate should be held by the trustees perpetually and only the income used for charitable purposes.

The case of Munger v. Munger, Texas Civ. App., 298 S.W. 470, is cited and the italicized part of the following paragraph quoted from that opinion. A reading of the entire paragraph clarifies what the court meant:

"If this contention is correct, that is, if the will makes no provision for vesting title during the life or lives in being at the death of testator and within 21 years and 10 months thereafter, *if, in fact, it may be continued indefinitely, or forever, as contended by appellants, the trust would be void as against public policy, and this without regard to the intention of testator.*"

We are not to be understood as holding that a perpetual private trust does not violate the constitutional inhibition. We are saying that by a reasonable construction the deeds in question do not create a perpetual private trust. It is one thing to say that if the instrument creates any possible contingency which would violate the rule against perpetuities, the instrument cannot stand and must be held void. It is quite another thing to say that if by any possible construction the instrument creates some possible contingency in violation of the rule the instrument must be held void.

It is a cardinal principle that the intention of the grantor shall govern. " 'The judicially ascertained intent of a conveyor is normally determined by the language employed in the conveyance, read as an entirety and in the light of circumstances of its formulation.' " Rust v. Rust, supra. It is also the settled rule that where an instrument is equally open to two constructions, the one will be accepted which renders it valid rather than void, it being assumed that a grantor would intend to create a legal instrument rather than one which is illegal. Neely v. Brogden, supra.

It seems to be evident that these grantors each owning an undivided ½ interest in 400 acres of land of relatively little value and desiring that their heirs, though numerous, should share equally, adopted the only practical method to accomplish that aim. While broad powers were given to the trustees, they were persons in whom the grantors had, presumably, the utmost confidence. The two trustees named in the first instrument were heirs and beneficiaries. One of the trustees named in the second instrument was a son and beneficiary, the other being the hus-

band of one of the beneficiaries. Even though both trusts had existed for a number of years before the sale here involved, the land had from time to time been listed with brokers for sale but no offer satisfactory to the trustees had heretofore been received. The grantors having named these living beneficiaries granted to them the equitable title as their interest appeared and in the furtherance of their plan restricted alienation so that the trustees would not be hampered in carrying out the terms of the trust and could make clear title at any and all times.

■ We are of the opinion that even though no limitation of time was imposed upon the trustees, the intention of the grantor would clearly indicate, and the law would imply, that they were to be given a reasonable length of time in which to carry out their obligations. What that reasonable time would be would involve all of the facts and circumstances. Parks v. Powell, Texas Civ. App., 56 S.W. 2d 323.[2]

Should trustees be derelict in their duty and be guilty of abuse of discretion or of not moving with reasonable diligence, the beneficiaries would have resort to the court to determine and adjust the rights of the parties and to compel, if necessary, action on the part of the trustees. Powel v. Parks, 126 Texas 338, 86 S.W. 2d 725; 54 Am. Jur., Trusts, Sec. 180.

■ Respondents contend further that even if the deeds do not run counter to the perpetuities rule, nevertheless since some of the named beneficiaries have died, the power of sale vested in the trustees so far as the interests of the deceased beneficiaries are concerned, does not survive. They argue that as to such interests the power of sale must be by implication and that the authorities do not favor a power of sale by implication. They admit no Texas case has been found on this point. To so hold would be to destroy effectively the trust almost from the beginning. It would have been unusual if one or more of these 36 people had not died within a reasonably short time after the execution of the deeds. That probability must have been contemplated by grantor. The point is overruled.

We hold that these deeds do not violate the rule against perpetuities and are therefore not void. The judgments of the trial court and the Court of Civil Appeals are reversed and judgment rendered in favor of petitioner.

Associate Justice Brewster dissents believing that under the clear and unambiguous language of the two deeds the trust was

2.—Reversed on other points. Powell v. Parks, 126 Texas 338, 86 S.W. 2d 725.

created for *"the following beneficiaries"* which they then proceeded to name. Accordingly when a named beneficiary died his interest in the land was freed from the trust provision and vested in his heirs under our statute of descent and distribution.

Opinion delivered June 9, 1954.

Rehearing overruled July 7, 1954.