Chris MATTERN, Petitioner,

v.

Magadelina HERZOG et al., Respondents.

No. A–9207.

Supreme Court of Texas.

April 17, 1963.

Rehearing Denied May 22, 1963.

W. E. Barron, Nevasota, W. S. Barron, Bryan, Joe J. Newman, Houston, for petitioner.

A. K. Stewart, Darden, Fowler & Creighton, Conroe, Williams, Lee & Lee, Houston, for respondents.

NORVELL, Justice.

The Court of Civil Appeals has reversed a District Court's summary decree and held that a clause of Paragraph II of the last will and testament of Monika Mattern is invalid because it violates the rule against perpetuities and constitutes an unlawful restraint upon alienation. 359 S.W.2d 86. The clause in question purported to give Chris Mattern, a child of the testatrix, the right to purchase certain real estate from the other beneficiaries named in the will. We have reached the conclusion that this option clause is not invalid as held by the Court of Civil Appeals and we accordingly reverse that Court's judgment and affirm that of the District Court.

The Court of Civil Appeals makes the following statement of the case:

"Paul and Monika Mattern executed the duly probated joint will whereunder Mrs. Mattern, the survivor, took their estate and the property remaining passed at her death to their children. Their daughter Marie was devised 20 acres not here involved. Then follows paragraph II which reads as follows:

" 'The remainder of all our real estate, wherever located or situated, which we may die seized and possessed of we give and bequeath to our beloved children, Chris Mattern, Jack J. Mattern, Magadeline Herzog, Paul J. Mattern, Barbara Mock, Reginia Gostslig, Johnnie Mattern, Agnes Pustka and Monika Mattern to share and share alike in the division thereof; *however, this bequest is made to our said named children with the provision that our son Chris Mattern shall have the right to purchase from each of the other children their interest in said real estate for the sum of $45.00 per acre, and in making such purchase*

*from said other children our said son Chris Mattern shall be entitled to deduct from the price of $45.00 per acre such sums of money as he may have advanced to us during our lifetimes.'* (Italics ours)

"After Mrs. Mattern's death and the probation of the will, three of the children conveyed their interests to appellee (petitioner here). But the five appellant children, (respondents here) refusing to convey, although requested to convey by appellee, brought this suit to relieve their title of appellee's claim that he had the right under the will to purchase their interests at $45.00 per acre."

It appears from affidavits submitted in connection with petitioner's motion for summary judgment that Paul Mattern died in 1952 and his widow died in 1959; that since 1951, the petitioner Chris Mattern has lived with his parents or with his surviving mother until her death and contributed some $2,237.82 in the form of supplies and services to their support. Shortly after his mother's death, the petitioner sought to exercise the option given to him in his mother's will by claiming credit for the sums advanced for his parent's support and offering to pay the balance up to $45.00 per acre in accordance with the testamentary clause above set out with the result above noted.

At the outset it may be noted that the intentions of Paul and Monika Mattern, the makers of the joint will, seem reasonably clear and definite, especially when viewed in the light of the surrounding circumstances above set out and concerning which there is no dispute. Mr. and Mrs. Mattern were living with one of their sons. It was anticipated that he would, from time to time, advance money for their wants and procure for them essential household needs and medical services, the exact amount of which could not be definitely ascertained at the time of the making of the will. In order to treat their children justly and

equitably according to their lights, the parents placed a price upon the land, and provided that the son who had supported them could purchase the land from his brothers and sisters and take credit for such sums as he may have advanced for their support. This plan was quite simple in concept and it has been repeatedly said that courts in construing wills should consider the language used and in the light of the attendant circumstances determine the intent of the testator.

The respondents concede that a will could be drawn which would make effective the objective which the makers wished to attain. However, it is stated by our Constitution that "Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed, * * *." Vernon's Ann.St. Const. art. 1, § 26. The effect of this constitutional provision and Article 1 of Vernon's Ann.Tex.Civ.Stats. was to adopt the English common-law rule against perpetuities. This rule is one of high public policy but in this State it is recognized that a construction which will render a contract or testamentary disposition enforceable rather than invalid is to be preferred even though the rule against perpetuities is involved. In holding that certain deeds which created trusts did not violate the rule against perpetuities, this Court, in Kelly v. Womack, 153 Tex. 371, 268 S.W.2d 903, said:

"It is a cardinal principle that the intention of the grantor shall govern. ' "The judicially ascertained intent of a conveyor is normally determined by the language employed in the conveyance, read as an entirety and in the light of the circumstances of its formulation." ' Rust v. Rust, supra. (Tex. Civ.App., 211 S.W.2d 262, approved by the Supreme Court, 147 Tex. 181, 214 S.W.2d 462). It is also the settled rule that where an instrument is equally open to two constructions, the one will be accepted which renders

it valid rather than void, it being assumed that a grantor would intend to create a legal instrument rather than one which is illegal. Neely v. Brogden, supra. (Tex.Com.App., 239 S.W. 192) * * *

"We are of the opinion that even though no limitation of time was imposed upon the trustees, the intention of the grantor would clearly indicate, and the law would imply, that they were to be given a reasonable length of time in which to carry out their obligation. What that reasonable time would be would involve all of the facts and circumstances. Parks v. Powell, Tex.Civ.App., 56 S.W.2d 323 (Reversed on other points, 126 Tex. 338, 86 S.W.2d 725)." [1]

Kelly v. Womack cites and follows Henderson v. Moore, 144 Tex. 398, 190 S.W.2d 800 in which the Texas rule was stated as follows:

"The rule against perpetuities renders invalid any will which attempts to create any estate or future interest which by possibility may not become vested within a life or lives in being at the time of the testator's death and twenty-one years thereafter, and when necessary the period of gestation."

 The rule against perpetuities and the doctrine relating to restraints on alienation are of a somewhat similar nature, although they do not proceed upon identical principles. A liberal view must be taken in order to construe appellants' (Herzog et al.) points in their brief in the Court of Civil Appeals as raising a question. relating to an unlawful restraint upon alienation. A similarly broad view must be taken of appellee's (Mattern) motion for rehearing

in the Court of Civil Appeals to reach the conclusion that a complaint was made of the Court of Civil Appeals' holding with reference to this question. However, as the Court of Civil Appeals considered and in part based its judgment upon the doctrine, we will adopt a liberal rule of construction and consider the contentions raised by the parties relating to both the rule against perpetuities and unlawful restraints upon alienation.

First, we consider the rule against perpetuities.

Under the will, the real estate involved passed in fee simple to the nine named children of the testatrix, Monika Mattern, "to share and share alike in the division thereof." This title, however, (as to the interest of eight of the children) was incumbered by an option under which Chris Mattern could purchase the land by paying to the other devisees the sum of $45.00 per acre, less such sum as he may have contributed to his parents' support. The Court of Civil Appeals considered that this was an interest in land which could extend beyond the life of Chris Mattern. Of course, if the right vested in Chris Mattern did not constitute an interest in land but was purely personal to him, it would expire upon his death and no problem involving the rule against perpetuities would be encountered. There is authority for the proposition that options of the character here involved create no interest in land. See, Annotation 162 A.L.R. 581, 1. c. 584. If, on the other hand, although the option be considered as creating an interest in land in that the optionee could enforce a conveyance upon payment of the purchase price, such option would not offend against the rule provided it could reasonably be said that it was contemplated by the settlor

---

[1]. For a discussion of a constructional preference for validity, see, 5 Powell on Real Property, § 777. The statement of Gray that "every will or settlement is to be construed as if the Rule did not exist, and then to the provisions so construed the rule is to be remorselessly applied."

Gray, "The Rule Against Perpetuities" (4th Ed.) § 629, probably stems from Baron Parke's opinion in Dungannon v. Smith, 12 Cl. & F. 546, 8 Eng.Rep. 1523. The rationale of Kelly v. Womack is more consistent with the philosophy of Powell than with that expressed by Gray.

that the option should be enforced by the optionee alone and hence during his lifetime. See, Weitzmann v. Weitzmann, 87 Ind.App. 242, 161 N.E. 385. Options created by testamentary instruments are often construed as expiring with the lifetime of the optionee. Annotation, 44 A.L.R. 2d 1214. In the American Law of Property (Vol. 6, § 2456) it is said that:

"If the option is given by an individual and/or to an individual, and if the option can be construed to be exercisable only during one or both of these lives, plainly the option is not invalid under the Rule against Perpetuities."

The primary attack of the petitioner upon the holding of the Court of Civil Appeals centers upon the argument that it reasonably appears from the nature and purpose of the will involved, the language employed therein and the surrounding circumstances thereof, that the makers of the will intended that the option to Chris Mattern should be exercised within a reasonable time after the death of the surviving maker of the will. The issue is thus squarely drawn. The Court of Civil Appeals says that the option creates a contingent interest in land of unlimited duration. The petitioner counters with the assertion that the option, if exercised at all, must be exercised within a reasonable time and that within such reasonable time he has elected to exercise his option.

The leading case involving the matter of options in connection with the rule against perpetuities is that of London and South Western Railway Company v. Gomm (1882) L.R. 20 Ch.Div. 562, decided by the English Court of Appeal. In this case, the Railway Company conveyed certain land which was no longer required by it for railway purposes to one George Powell retaining,

however, an option which bound Powell, his heirs and assigns to reconvey the property to the Railway Company for the sum of £100 upon six months written notice. The Court, speaking primarily through Sir George Jessel, held that the option or covenant to reconvey was obnoxious to the rule against perpetuities.[2] With reference to the time element prescribed in the option, the Master of the Rolls, after reading the covenant, made the following remarks with reference thereto:

"Now it is unlimited in point of time, and it does not appear to me to be possible to insert a limit of time, because to put in the words, 'within a reasonable time', or any other words limiting the time, would be *exactly contrary to the intention of the parties.* It is not only unlimited in point of time but is obviously intended so to be. The railway company do not want the land now, and they do not know that they ever will want it, but their bargain is that whenever it may be required for the works of the company the owners or owner for the time being of the land are or is to convey to the company. The very essence of the contract is that it shall be indefinite in point of time. You cannot, as in Kemp v. South Eastern Railway Company [1872, L.R., 7 Ch.App. 364], insert by intendment the limitation that the land is to be taken before the time for executing the works had expired, for in this case the time for the execution of the works had already expired. It appears to me therefore plain (and indeed it was admitted in argument by the Respondents) that the option is unlimited in point of time." (Italics supplied)

From the report of Kemp v. South Eastern Railway Company (mentioned in

---

2. See also, Barton v. Thaw, 246 Pa. 348, 92 A. 312, Ann.Cas.1916D, 570; Maddox v. Keeler, 296 Ky. 440, 177 S.W.2d 568, 162 A.L.R. 578, Annotation, "Option to purchase as violation of rule against per-
petuities or rule forbidding restraints on alienation" 162 A.L.R. 578; American Law Institute's Restatement of the Law of Property, §§ 393, 394.

*Gomm*) it appears that the agreement involved read as follows:

> "The company shall erect and for ever maintain a passenger station upon the piece of land numbered 77 in the company's plan, and one acre of ground shall be considered as covered by the said sum of £2000 for the site and purposes of such station; and if the company shall require more than one acre of ground for the site or purposes of the said station, or any additional ground for any purpose beyond that specified in the said schedule hereto, they shall pay for the same at the rate of £100 per acre."

In construing this agreement, Lord Hatherley, the Lord Chancellor said:

> "This agreement would not run for all time, and merely fixed the price instead of leaving it to be settled by a jury or by arbitration—that is all. I cannot understand why it should be thought to be a roving agreement extending over 200 acres of land, or for an indefinite period of time.

> "Then reading the agreement so, I hold that the company may, within the time within which they are to finish their works, have whatever land they want at £100 per acre."

In Rice v. Lincoln & North Western Railroad Co., 88 Neb. 307, 129 N.W. 425, a somewhat similar situation to that disclosed in *Kemp* was considered by the Supreme Court of Nebraska. The case was tried upon the counterclaim of the railroad company which sought and was granted a decree of specific performance ordering Rice to convey certain real property to it. The contract provided that Rice would convey a certain tract of land to the railroad company and in addition provided that:

> "We (Rice) further agree that said company may proceed in the construction of said road over said land, and we will sell to the said railroad com-

pany such additional right of way as they may require at the rate of $60 dollars per acre, with the privilege of changing any water course necessary in the construction of said road, and the right to build and maintain a snow fence for the term of five months each year at any point where said snow fence may be deemed necessary within two hundred feet of either side of its right of way on said described land, beginning November 15th and ending April 15th of each succeeding year; and I agree to settle all damage to tenant on account of his leasehold: Provided, that said railroad company shall during the years 1906 and 1907 construct its said railroad from on said land to ——— and pay the said S. H. Rice the sum of $150.00 dollars, then this obligation shall be of force and virtue in law; but if said company shall neglect or refuse to pay the said sum within 1 month from date, then either party may have the damages for Right of Way assessed as provided by law."

While the Supreme Court reversed the decree of the trial court upon the grounds that it would be inequitable to order specific performance, the Court considered the contention that the agreement was obnoxious to the rule against perpetuities and found that it was not. The Court said:

> "The second proposition of the plaintiff as stated in the brief is as follows: 'The said contract, assuming it to be otherwise valid, was void so far as it sought to bestow upon the railroad company the option to purchase additional lands, because it violated the rule against perpetuities.' It appears to be conceded by the company that if the exercise of its option to purchase was not limited as to time, and the contract had by express terms been extended to the 'heirs, executors, administrators, and assigns and the owner or owners for the time being of the lands con-

veyed and all persons who should and might be interested therein,' it would violate the rule against perpetuities. The company contends that it does not violate this rule for two reasons: The contract by its terms is personal to this plaintiff only; and it is limited in time to the construction of the railroad which again in express terms is limited to the two years named in the contract.

"In the view that we take of the second proposition of defendant upon this point, it is not necessary to determine whether the true construction of this contract is that the deed given pursuant thereto should contain covenants running with the land. The second proposition of defendant on this point, that the contract should be construed to limit the exercise of the option to the time of the construction of the road, we think is right. * * * The agreement is that, if the company should require 'additional right of way * * * in the construction of said road,' plaintiff shall convey it, and be paid therefor at $60 per acre. The exercise of the option, then, was limited to the two years in which the construction was to be completed, and the rule against perpetuities is not violated."

We are here concerned with an option which was contained in a will having for its purpose the settlement of an estate and the distribution of the testator's property. It has been stated generally that in options, "time is of the essence", Lusher v. First National Bank of Fort Worth, Tex.Civ. App., 260 S.W.2d 621, ref. n. r. e., 13 Tex. Jur.2d 163, Contracts, § 38. When we examine the paragraph of the will here involved, we find that in the first part thereof, the property is left to the children of the makers of the will to "share and share alike in the division thereof." Then follows the option clause which gives to Chris Mattern the right to purchase from each of the other children. In connection with this right of purchase, Chris Mattern is entitled to deduct from the stated purchase price "such sums of money as he may have advanced to us during our lifetime." The sums of money so advanced would undoubtedly constitute claims against the estates of the makers of the will which would have to be settled within prescribed times after the death of the surviving maker of the will.

■ We think it can reasonably be said from the nature of the instrument, the wording employed therein and the circumstances surrounding the execution of the will, that the makers intended that the option given to Chris Mattern should be exercised within a reasonable time. We do not construe the clause as one which attempts to preserve the claim of Chris Mattern against the estate of the survivor for an indefinite time, nor as giving him, his heirs and assigns an option which would extend beyond the period of time allowed by law for the due administration of the estate of Monika Mattern and the settlement of claims against said estate. We regard the cases of Kemp v. South Eastern Railway Co. (1872, L.R., 7 Ch.App. 364 and Rice v. Lincoln & North Western Railroad Co., 88 Neb. 307, 129 N.W. 425), as supporting by analogy the conclusion we have reached.

It should also be here noted that the Kentucky case of Maddox v. Keeler, 296 Ky. 440, 177 S.W.2d 568, 162 A.L.R. 578 involved an option for repurchase which the contracting parties intended should be of indefinite duration. In this case we hold that the makers of the will did not intend to give to Chris Mattern an option to purchase of indefinite duration but rather one which had to be exercised, if at all, during a reasonable period of time bearing some relationship with the time required to administer and finally settle the Monika Mattern estate.

■ A contrary holding would not only be somewhat unrealistic insofar as the

probable intention of the makers of the will is concerned, but undesirable from a policy standpoint. As above indicated, options are generally of limited duration and often informally stated, even though they may be of great importance from a property standpoint. When the wording of the option does not compel a construction that the parties intended that the time element should be unlimited, the court will not construe an option contract or a will provision granting an option to run for an indefinite time and thus destroy the validity of the option provision. It has been stated that the courts will go so far as to imply a reasonable time when no time limit is expressly stated. Magee v. Mercantile-Commerce Bank and Trust Company, 343 Mo. 1022, 124 S.W.2d 1121. While the case of Kelly v. Womack, above mentioned, did not deal with the time within which an option should be exercised, it did consider the time period within which trustees should exercise the powers vested in them by certain deeds. The rule against perpetuities was involved and this Court directly held that the law would imply that the trustees "were to be given a reasonable time in which to carry out their obligations." We regard Kelly v. Womack as being in point upon the question before us. Clause II of the will is not obnoxious to the rule against perpetuities.[3]

We think what has been said also effectively answers the assertion that the option provision is unenforceable as a restraint upon alienation. The Restatement of Property classifies restraints on alienation into three classes, namely, (1) disabling restraints, (2) promissory restraints and (3) forfeiture restraints. Restatement of the Law of Property, Vol. 4, "Social Restrictions Imposed on the Creation of Property Interests, § 404[4] and illustrations given thereunder. 6 American Law of Property §§ 26.6 et seq. The Texas authorities cited by the Court of Civil Appeals involve disabling restraints and support the general rule that such restraints are invalid. However, in the case of an option, a direct disabling restraint is not involved. There is no direction to the devisee ordering him not to convey, but rather the option operates by indirection in that the devisee's conveyance may be defeated through the exercise of the option. Options attached to conveyances or devises of land whereby one party receives the property subject to the right of another to purchase the same do not fit into the usual classifications of restraints upon alienation. There are numerous cases in which such options have been upheld as is evidenced by the cases heretofore mentioned. Generally the courts have tested the legality of these options by the rule against perpetuities and primarily the problem is one relating to the time of the vesting of future estates, but we do no wish to be understood as intimating that any option is valid if the time for the exercise thereof is within the period prescribed by the rule against perpetuities. See, Kershner v. Hurlburt, Mo., 277 S.W.2d

3. For a critique of the rule against perpetuities as applied to options, see, "The Common Law Rule against Perpetuities" by Professor W. Barton Leach and Mr. Owen Tudor in American Law of Property, Vol. 6, § 24.56.

4. § 404 Definitions.
 (1) A restraint on alienation, as that phrase is used in this Restatement, is an attempt by an otherwise effective conveyance or contract to cause a later conveyance.
 (a) to be void; or
 (b) to impose contractual liability on the one who makes the later conveyance when such liability results from a breach of an agreement not to convey; or
 (c) to terminate or subject to termination all or part of the property interest conveyed.
 (2) If a restraint on alienation is of the type described in Subsection (1), Clause (a), it is a disabling restraint.
 (3) If a restraint on alienation is of the type described in Subsection (1), Clause (b), it is a promissory restraint.
 (4) If a restraint on alienation is of the type described in Subsection (1), Clause (c), it is a forfeiture restraint.

619. It has been suggested that the rule against perpetuities is ill adapted to fixing a limitation of reasonableness for options insofar as commercial transactions are concerned and that possibly an approach through the doctrines as to restraints on alienation would be more promising. 6 American Law of Property 143, § 24.56. Cf. Annotation 162 A.L.R. 581, l.c. 590. However, if the restraint on alienation doctrine is to be employed to attain socially desired results, the element of the reasonableness of the time limit of the option must be considered. It will not do to mechanically apply the rule applicable to disabling restraints and thus inhibit the employment of desirable contractual and testamentary provisions and unnecessarily circumscribe the freedom of contract and the power of testamentary disposition. Before the option may be stricken it must appear that it bears some relationship to the evil which the rules governing undesirable restraints are designed to prevent. The present option involved, limited as it is to a reasonable period of time, is not a socially undesirable device. We hold that it is valid and enforceable.

As above indicated, the judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

GRIFFIN and SMITH, JJ., dissenting.

SMITH, Justice.

I respectfully dissent.

The provision in the will giving to petitioner time unlimited to purchase respondents' fee title violates the rule against perpetuities and also is a restraint upon alienation.

Petitioner seeks to apply "reasonableness" in order to escape the rule against perpetuities.

To determine if a will violates the perpetuity rule the test is whether at the very instant of the testator's death the right or interest devised, by possibility, might not vest within a life in being plus 21 years and the period of gestation.

Petitioner's contention is that he had a reasonable time after the testatrix died to purchase the land and to deduct from the purchase price the advancements made by him to the testatrix and her husband.

If by possibility petitioner had died the day after the testatrix, the indebtedness due to him by the testatrix would have survived his death for the benefit of his heirs and devisees. The right to acquire a future interest that she attempted to give him was not a personal right, dying with him, but upon his death it would have vested in his heirs or devisees who likewise could have deducted his advancements from the purchase price. By possibility these devisees or heirs could have died without attempting to exercise any right of purchase.

Petitioner makes the point that a will is to be liberally construed to give effect to the intention of the testator. This is the usual rule, of course. But a construed or an expressed intention falls when the will does not by necessity vest the future interest within the time not condemned by the rule against perpetuities. If by possibility the estate might not vest within that period, the intention of the testator is immaterial and is rejected by Article 1, Section 26, of the Constitution of the State. When it appears that the will provides for the possible vesting of an estate beyond the perpetuity period, it is condemned by fundamental law without regard to the intention of the testator or the devisee. And a "reasonable time" may never be read into a will that by possibility would permit a future estate to vest beyond the perpetuity period. Once it is determined that by possibility the future interest might not vest within the perpetuity period, inquiry ceases, intention becomes unimportant, and reasonableness affords no relief. There-

fore, the rule in Kelly v. Womack, 153 Tex. 371, 268 S.W.2d 903, relied upon by the Court, has no application.

If the provision be treated as an option, not a gift or bequest, to petitioner, such option is likewise condemned and is not aided by reasonableness or by intention.

In Gray's "Rule Against Perpetuities", Fourth Edition, it is said at page 362:

"Where, however, a contract raises an equitable right in property which the obligee can enforce in chancery by a decree for specific performance, such equitable right is subject to the Rule against Perpetuities. This was decided by the Court of Appeal in London & South Western R. Co. v. Gomm, where an option to purchase land, unlimited as to time, was held void; overruling Birmingham Canal Co. v. Cartwright."

In 162 A.L.R., at page 581:

"According to the weight of authority in jurisdictions applying the common-law rule against perpetuities, an option to purchase real property, unlimited as to the time for its exercise or extending beyond the period limited by the rule against perpetuities, violates such rule and is invalid."

The Court of Civil Appeals on pages 6 and 7 quoted with approval from Maddox v. Keeler, 296 Ky. 440, 177 S.W.2d 568, 162 A.L.R. 578. That this opinion is in keeping with the great weight of authority is apparent from the cases cited in the decision and in the annotations in 162 A.L.R. 581, et seq.

No one doubts the right of a person to contract or to devise an option not violative of the rule against perpetuities. Options are property and pass by contract, devise or descent. 73 C.J.S. Property § 2, p. 151; Vernon's Texas Probate Code, Vol. 17A, Sec. 58, p. 267. The material thing or res itself is property, and also the right to acquire it, to use it, or to dispose of it, is property. Property "[i]n its ordinary legal signification * * * 'extends to every species of valuable right and interest * * *.'" Womack v. Womack, 141 Tex. 299, 172 S.W.2d 307; Spann v. City of Dallas, 111 Tex. 350, 235 S.W. 513, 19 A.L.R. 1387; Department of Financial Institutions v. General Finance, 227 Ind. 373, 86 N.E.2d 444, 10 A.L.R.2d 436.

Whether an option to purchase is a valid property right, or an invalid claim violating the rule against perpetuities, is to be determined as of the date of the testator's death. Gray's Perpetuities, Fourth Edition, p. 235, and numerous decisions cited; 32 Tex.Jur. 834; Anderson v. Menefee, Tex.Civ.App., 174 S.W. 904; Neely v. Brogden, Tex.Com.App., 239 S.W. 192.

On the day when the testator dies by possibility petitioner might not have been able to purchase, he might not have desired to purchase, or he might have died without purchasing. By possibility, his heirs or devisees or successors might not desire to or could not purchase, or would die without purchasing. No one was compelled to purchase within the perpetuity period. As was said in Maddox v. Keeler, supra:

"Assuming, without deciding, that the option retained in the deed created a future equitable interest in the land, susceptible of inheritance, it is obvious that such interest is a limitation upon the power of absolute alienation, so long as it remains in existence. Gray's The Rule Against Perpetuities, Fourth Edition, p. 355, Sec. 323. Such interest, therefore, being the subject of inheritance, would remain a limitation upon the power of alienation until the owner of the property concluded to sell or convey the tract to another. Thus, the right to exercise the option could pass from generation to generation, until finally it might vest in one coming into being after the expiration of twenty-one years and ten months

after a life or lives in being at the time of the creation of the estate. * * *"

The Court of Civil Appeals correctly held that the provision of the will under consideration violates the rule against perpetuities and constitutes an unlawful restraint upon alienation. The judgment of the Court of Civil Appeals should be affirmed.

GRIFFIN, J., joins in this dissent.