**METROPOLITAN SAVINGS & LOAN ASSOCIATION and Jerry W. Hill, Substitute Trustee, Appellants,**

v.

**Nick NABOURS and Wife, Suzanne Nabours, Appellees.**

**No. 12-82-0027-CV.**

Court of Appeals of Texas, Tyler.

May 19, 1983.

Rehearing Denied June 22, 1983.

Jerry W. Hill, Roberts & Harbour, Longview, for appellants.

Kenneth L. Ross, Sharp, Ward, Ross, McDaniel & Price, Longview, for appellees.

COLLEY, Justice.

This is an appeal from an order granting a temporary injunction.

On August 27, 1975, Alfred T. Burke and wife, Rita M. Burke (hereafter "Burkes"), purchased a house and lot located at 700 Eden Drive in the city of Longview, Gregg County, Texas. The Burkes borrowed $76,-200 from appellant, Metropolitan Savings & Loan Association (hereafter "Metropolitan"), to finance such purchase, and executed a promissory note in said sum payable

in monthly installments. The note bears interest from date at the rate of 8.75 percent per annum. The Burkes also signed and executed a deed of trust to Earl Roberts, Jr., as trustee, for the use and benefit of Metropolitan as further security for the payment of said note. The deed of trust contains, among its other provisions, the following paragraph:

The grantors further agree that they will not make any voluntary intervivos transfer of the premises or any part thereof without first obtaining the written consent of the mortgagee. Any such transfer, if the mortgagee shall not so consent shall constitute a default under the terms of this instrument and *the grantors shall pay the mortgagee,* in addition to the whole indebtedness (as herein provided in event of default), *a prepayment fee to the extent that such shall be lawful, calculated on the amount of principal prepaid at the rate as though the grantors had elected to prepay the indebtedness in accordance with the terms of the notes secured hereby.* If the mortgagee shall so consent, it shall consent also to the substitution of grantor's transferee as obligor under this deed of trust and the aforesaid note.[1] (Emphasis added.)

On August 14, 1981, Metropolitan elected to accelerate the maturity of the remaining installments due on the Burkes' note and made a demand in writing on the Burkes for full payment of the loan within ten days. On September 9, 1981, Metropolitan notified the Nabours that because of the default brought about by the sale of the Eden Drive property to them, Metropolitan had elected to accelerate the maturity of the Burkes' note payments and that such property would be sold at trustee's sale on October 6, 1981, to enforce the deed of trust lien thereon. On October 5, 1981, Nabours filed suit against appellants seeking injunctive relief to prevent the trustee's sale of the property pursuant to the powers granted in the deed of trust hereinabove described. The trial court granted a temporary

restraining order on October 5 enjoining the trustee's sale, and later at an agreed hearing and following the reception of evidence the trial court granted Nabours' petition for temporary injunction pending final determination of the cause and enjoined appellants from posting notices and from foreclosing their deed of trust lien by trustee's sale.

At trial a letter was introduced (Exhibit B) from the appellees' attorney, Kenneth L. Ross (hereafter "Ross"), to Metropolitan dated February 23, 1981, showing "blind copies" to the Burkes and the appellees (hereafter Nabours). This letter advised Metropolitan that the Burkes proposed to sell the Eden Drive property to the Nabours and requested Metropolitan to give its written consent to such sale and transfer. On March 10, 1981, the Nabours' attorney again wrote Metropolitan advising it that Nabours would furnish information for credit report on himself but would not renegotiate the interest rate on the existing Burke loan (Exhibit J) which were conditions set out by Metropolitan for the transfer. In response to that letter, on March 3, 1981 (Exhibit M), Terry Irick, executive vice-president for Metropolitan, wrote a letter to the Nabours' attorney Ross advising him that if the transfer from Burkes of the Eden Drive property was made without the consent of Metropolitan that Metropolitan ". . . would consider this a default under the terms of the deed of trust and would have to act accordingly." At trial, Irick also testified without contradiction that he telephoned Nabours the day before the transfer of the property was made and advised him not to "close" on the property. The evidence shows that without Metropolitan's consent Burkes executed a general warranty deed as grantors to the Nabours as grantees in April 1981 (plaintiff's petition alleges the sale to have taken place on April 4, 1981), conveying the Eden Drive property for a consideration of $53,000 in cash and the execution and delivery of a

---

1. The note provides where principal is prepaid during any one "loan year," in excess of 20% of the original principal sum [of note], a penalty of one and one-half percent of excess (1981) would also be due.

promissory vendor's lien note in the principal amount of $72,757.13, payable to the order of the Burkes. This deed contained no agreement of the Nabours to assume or pay the note held by Metropolitan, but the conveyance was subject to Metropolitan's note and first vendor's lien against the property securing the payment of Metropolitan's note. By the terms of such deed the Burkes covenanted to pay Metropolitan's note according to its face and reading.

The original briefs of the parties to this appeal were submitted after the Amarillo Court of Civil Appeals decided *Sonny Arnold, Inc., et al. v. Sentry Savings Association, et al.,* 615 S.W.2d 333 (Tex.Civ.App. 1981), but before the Texas Supreme Court's decision affirming the same case reported at 633 S.W.2d 811 (Tex.1982). Both parties filed supplemental briefs herein. In its supplemental brief Metropolitan seized on the Supreme Court's decision as establishing clearly that such so-called "due on sale" clauses, as the one at issue here, are valid and enforceable. The Nabours in their brief seem to agree, but urge us to affirm the judgment below on equitable considerations and grounds, i.e., waiver and the unreasonable refusal of Metropolitan to consent to the transfer.

■ No findings of fact or conclusions of law were requested or filed in this case and thus we must uphold the trial court's order on any legal theory supported by the evidence. *Davis v. Huey,* 571 S.W.2d 859 (Tex. 1978).

■ We have carefully examined the record in this case and we conclude that the clause in dispute here (quoted above) is in fact a restraint on alienation within the definition of the Restatement of Property, Section 404(1)(b), because the clause here, in part, provides:

... and the grantor shall pay the mortgagee ... a prepayment fee to the extent that such shall be lawful calculated on the amount of principal prepaid at the rate as though the grantors had elected to prepay the indebtedness in accordance

with the terms of the note secured hereby.[2]

Such provision imposes a contractual liability on the Burkes resulting from a breach of their agreement not to convey. The Restatement rule mentioned above (Section 404(1)(b)) provides that a restraint on alienation "... is an attempt by an otherwise effective ... contract to cause a later conveyance to impose contractual liability on the one who makes the later conveyance when such liability results from a breach of an agreement not to convey." The Supreme Court, in testing the clause there under scrutiny, adopted this restatement rule in *Sonny Arnold, Inc. v. Sentry Savings Association, supra,* at 814. The clause at issue here does contain an agreement not to convey (without the consent of Metropolitan) and *a penalty for breach of that agreement* which was absent in *Sonny Arnold.* Thus under the holding in that case, the clause at issue here is *a restraint on alienation under the definition in the Restatement rule.* Having concluded that the clause utilized by Metropolitan in its deed of trust is a restraint on alienation, we are next called upon to decide whether or not it is an *unreasonable* restraint and therefore void as against public policy. *Mattern v. Herzog,* 367 S.W.2d 312 (Tex.1963); *McGaffey v. Walker,* 379 S.W.2d 390 (Tex.Civ.App. —Eastland 1964, writ ref'd n.r.e.). At common law, the tying up of property is regarded as an evil and to protect against this evil two doctrines arose, (1) the rule that all interests were alienable, which is the restraint against alienation, and (2) all interest in property must be created or arise within certain time limits. This is the rule against perpetuities. Both rules are frequently involved in any analysis by courts to determine whether either rule is violated. *Mattern v. Herzog, supra; O'Connor v. Thetford,* 174 S.W. 680 (Tex.Civ.App.—San Antonio 1915, writ ref'd). The restraint under consideration, found in the provisions of the mortgage, is effective only during the existence of the mortgage debt and was created by an unambiguous clause prohibiting transfer without the consent of the

2. See note 1, page 821.

mortgagee. The restraint here compels the transferee of the mortgagor to re-negotiate a loan with the mortgagee. In such re-negotiations there are no limits, and as a price for its consent the mortgagee would be free to raise the interest rate and shorten the time for re-payment of the principal owed at the time of transfer, thereby drastically increasing the amount of the monthly payments required. The mortgagee is also free under this restraint to rewrite any of the provisions of the deed of trust securing the payment of the mortgage note secured thereby. If the mortgagor fails to secure the approval and consent of the mortgagee to the transfer to his proposed transferee, he undoubtedly will suffer acceleration of the debt and foreclosure of the lien against his property. Under this record the mortgagor would also be liable for the pre-payment penalty as set forth above. All of these possibilities would be well known to both the mortgagor and his proposed transferee. We deem that under the record in this case that there is a sufficient quantum of restraint presented to deserve condemnation as an unreasonable restraint on alienation under the venerated common law rules above discussed. We believe our decision rests on sound policy considerations in this case. The Supreme Court in *Sonny Arnold* has clearly held that the possibility of acceleration of the debt is not a restraint on alienation. We do not read this opinion however as precluding us from considering the possibility of acceleration as a circumstance to be considered in passing upon the question of the reasonableness of the restraint on alienation here presented. If, as we have concluded, the clause does constitute a restraint on alienation, the effect of acceleration logically must be considered in judging the question of reasonableness.

In coming to our conclusions in this case, we have considered, and take judicial notice of the facts well known by reasonably intelligent people in this State, that during the period of time in which the transaction below occurred between the parties to this appeal, interest rates for home loans had escalated and financial institutions were short of funds for investment in home loans

to finance transfers of existing dwellings as well as for construction of new ones. 1 Ray, Texas Evidence, Section 151, p. 143 (3rd ed.). This escalation made low-interest mortgage properties extremely valuable.

We further observe that the clause at issue contained no specific provisions upon which the mortgagee's power to re-negotiate existed. As pointed out above, the requirement that Metropolitan consent to the transfer meant that it was free to re-negotiate the terms of the deed of trust and other ancillary documents without limitation. Deciding policy questions as here presented are difficult, and while so doing we have carefully considered the well-written opinion of Justice Powers in *Crestview Ltd. v. Foremost Ins. Co.,* 621 S.W.2d 816 (Tex.Civ.App.—Austin 1981, writ ref'd n.r.e.) (decided before the Texas Supreme Court decision in *Sonny Arnold, supra*). Such case involves the analysis of a so-called "due on sale" clause which read in part:

> In the event grantors, or any owner of the mortgaged premises, without first obtaining the approval of noteholder (*which approval shall not be unreasonably withheld*) should sell or otherwise dispose of the mortgaged premises, or any part thereof, at any time before this deed of trust is fully released and discharged, noteholder shall have the option to declare the indebtedness hereby secured due and payable . . . .

Except for the wording of the clause, the facts in *Crestview, Ltd.,* are quite similar to the facts of our case, i.e., the lender was required to consent to a transfer of the property but refused to do so. Despite such refusal and knowing about the same, the purchaser, Crestview, Ltd., purchased such properties. After lender became aware of such transfer the lender accelerated the debt and ordered the trustee to proceed to enforce the lien by a trustee's sale on the basis of the "due on sale" clause. The purchaser brought a declaratory judgment action and sought injunctive relief against the trustee's sale. The trial court denied

the application for the injunction and the Austin Court of Civil Appeals affirmed. As the reader may observe, the clauses in *Sonny Arnold* and *Crestview, Ltd.,* were essentially identical though couched in somewhat diverse language. We make the same distinction between our clause and that found in *Crestview, Ltd.,* as the distinction noted above regarding the clause in *Sonny Arnold.* Thus we do not consider that the rule of *Crestview, Ltd.,* is applicable to the facts here. However, in *Crestview, Ltd.,* the court noted:

> "The legal issue is thus narrowed to whether the clause should be circumscribed on ... public policy grounds, *notwithstanding* the contractual intent clearly expressed thereby." (Emphasis in original.)

Judge Powers reasoned that since the language of the "due on sale clause" there involved was not ambiguous, it should be enforced as written under contract law, citing *Murchison v. Freeman,* 127 S.W.2d 369 (Tex.Civ.App.—El Paso 1939, writ ref'd). The court in *Crestview, Ltd.,* held the clause there was *not a restraint on alienation* within the definition of the Restatement rule, but if it were a restraint on alienation, it would be enforced as not an *unreasonable restraint* "... because it is expressly qualified by the requirement of reasonable conduct on the part of the noteholder." Justice Powers further points out that the trial court found that the lender had not acted unreasonably in refusing to consent to the transfer of the property.

Having concluded that the clause in Metropolitan's deed of trust at issue here was an unreasonable restraint on alienation, the same is void and unenforceable. Therefore, the trial court did not abuse its discretion in granting the temporary injunction.

The judgment is affirmed.