Bradley C. MILES, Guardian ad litem for Mary Jane Robbins and Betty Ruth Robbins, minors, Appellant,

v.

The SAN ANGELO NATIONAL BANK, Independent Executor and Trustee under the Will and of the Estate of T. N. Robbins, deceased, and Hazel Ruth Pickering, Freddie Eugene Spieler and John Howard Spieler, Appellees.

No. 11803.

Court of Civil Appeals of Texas, Austin.

March 24, 1971.

Rehearing Denied April 14, 1971.

Bradley C. Miles, San Angelo, for appellant.

Upton, Shannon, Porter & Johnson, Craig Porter, Kerr, Gayer & Gregg, Lloyd Kerr, San Angelo, for appellees.

O'QUINN, Justice.

The San Angelo National Bank, as independent executor and trustee under the will of T. N. Robbins, deceased, brought this suit for declaratory judgment seeking construction of provisions in the will under which the residue of the estate was devised to the surviving child or children of the beneficiary of a life estate.

The main question is whether the children of the life beneficiary acquired a vested interest upon the death of their father or a contingent interest to become vested when the youngest child became twenty-one years old.

T. N. Robbins of San Angelo made a will in May of 1952 by which all his property was devised "in fee simple" to the bank as independent executor and trustee, and provision was made in effect for a life estate in his son, T. N. Robbins, Jr. The will provided that on the death of his son the "rest and residue" of the testator's property "be delivered to the child or children * * * that are living at his death, share and share alike." By proviso in the same paragraph the testator called for the bank to "continue to handle * * * the estate until his youngest child reaches the age of twenty-one * * * then it is to be delivered to them in fee, share and share alike * * *", with a further proviso that the bank " * * * continue to pay out the net income to the child or children * * * until the youngest has reached the age of twenty-one (21) years."

The problem, calling for construction of the will, grows out of the fact that the youngest of the three children surviving the life beneficiary died intestate at age fifteen and before attaining age twenty-one.

T. N. Robbins, Jr., holder of the life estate under the will, was married to Hazel Ruth Spieler, who by a former marriage had two sons, Freddie Eugene Spieler and John Howard Spieler. Three children were born to the marriage between Robbins and the former Mrs. Spieler. Mrs. Robbins, now Hazel Ruth Pickering, and her two sons by the Spieler marriage are appellees, and the two living children of T. N. Robbins, Jr. and Mrs. Pickering are appellants with their guardian ad litem, Bradley C. Miles.

The three children who survived T. N. Robbins, Jr. were Mary Jane Robbins, born in February of 1951, Betty Ruth Robbins, born in October of 1952, and Thomas Wayne Robbins, born in March of 1954. T. N. Robbins, Jr., died in April of 1966, and his youngest surviving child, Thomas Wayne Robbins, died afterwards, in November of 1969, aged about fifteen years and nine months.

The bank, in its capacity as independent executor and trustee of the Robbins will, brought this suit for declaratory

judgment under provisions of Article 2524-1, Vernon's Anno.Civ.Sts. (Acts 1943, 48th Leg., p. 265, ch. 164), seeking construction of the will "as to the relative rights, interests, relationships and statuses of all parties to this cause as to such properties." Courts of this State have jurisdiction to construe wills under the Uniform Declaratory Judgments Act and have the duty to do so as a relief from uncertainty and insecurity. Holliday v. Smith, 458 S. W.2d 106, Tex.Civ.App.1970, writ ref. n. r. e.; City of Corpus Christi v. Coleman, 262 S.W.2d 790, Tex.Civ.App.1953, no writ.

The trial court held that upon the death of T. N. Robbins, Jr., the beneficial interests in the property of his father's estate "became vested to the extent of an undivided one-third" in each of the three surviving children, subject to legal title in the bank "to manage, control and administer" under the will. Upon the death thereafter of the youngest child, Thomas Wayne Robbins, the court held, his undivided one-third interest "became vested in the heirs at law of the said Thomas Wayne Robbins * * *"

Upon these findings the trial court concluded that the beneficial interest of Thomas Wayne Robbins vested one-half in his natural mother, Hazel Ruth Pickering, one-sixth in each of his two sisters, Betty Ruth Robbins and Mary Jane Robbins, and one-twelfth each in his two half-brothers, Freddie Eugene Spieler and John Howard Spieler. The court held that all vested interests were subject to the trust until it should terminate under the will.

The guardian ad litem, in behalf of the two daughters of T. N. Robbins, Jr., has perfected an appeal from this judgment and brings one point of error to the effect that the trial court incorrectly held that Thomas Wayne Robbins had a vested interest "in the T. N. Robbins Trust Estate inheritable by his heirs at law at the time of his intestate death at the age of fifteen years."

The Supreme Court has held repeatedly that a rule of basic importance to be followed in construing a will is to determine the intention of the testator from the language he used. Kelly v. Womack, 153 Tex. 371, 268 S.W.2d 903 (1954); Guilliams v. Koonsman, 154 Tex. 401, 279 S.W.2d 579 (1955); Haile v. Holtzclaw, 414 S.W.2d 916 (Tex.Sup.1967); Rekdahl v. Long, 417 S.W.2d 387 (Tex.Sup.1967). If the intention of the testator is not clearly disclosed by the particular language used, his intention may be found by looking to the provisions of the will as a whole and to the circumstances attending its execution. Guilliams v. Koonsman, supra.

At the time T. N. Robbins executed his will in May of 1952, his son, T. N. Robbins, Jr., was married and had one child, then about fifteen months old. Within five months and a few days thereafter the second child was born, and before the elder Robbins died in April of 1957, the third child had been born and, at the time of the testator's death, was about three years old. The provisions of Robbins' will respecting a child or children of his son were not mere speculations, but were placed in the will with the firm knowledge that at least one child of Robbins, Jr., was then in being. The testator must have known also at the time he made his will that his son's wife had two living children by an earlier marriage.

After stating at the outset that all property owned by him was "separate and individual" and after providing for payment of debts, expenses and taxes, the testator appointed the San Angelo National Bank, at San Angelo, Texas, "as Executor and as Trustee" of his estate. Then followed the usual provisions applicable to independent executorship, with a final clause stating " * * * to the end that said San Angelo National Bank will administer this estate free from the orders of the Probate Court or any other court."

In the succeeding paragraphs of his will, numbered "FOURTH" through "NINTH",

the testator undertook to dispose of his property, give directions to the bank as independent executor and trustee, and to provide for orderly record keeping, employment of attorneys and accountants, and payment of the bank for its services.

The testator left all his property "in fee simple" to the bank. Paragraph FOURTH is set out in full:

"I give, devise and bequeath all of my property, real, personal and mixed, of every description and wherever situated unto said San Angelo National Bank, Executor and Trustee, in fee simple, with full power and authority to handle, invest, reinvest, sell and dispose of, and to purchase other properties and other securities, and in general to do anything that it may elect; save and except, however, I direct that the minerals in, on and under my lands that lie North and Northwest of the City of San Angelo, be kept intact and not sold and disposed of, but will pass with the residue of my estate as hereinafter stated. However, my said Executor and Trustee herein shall have all of the rights and powers to execute any oil and gas lease that it may see fit to make on any of my real estate or any real estate purchased during the administration of this estate. In this connection I would suggest that the surface of the lands lying North and Northwest of the City of San Angelo be not sold until the City has further developed the territory in that direction and City water can be had on said property, and that it be then sold in small tracts. This is only a suggestion, however."

In paragraphs FIFTH and SIXTH the testator provided in effect for a life estate in his son, T. N. Robbins, Jr. The testator did provide that, within the discretion of the "Executor and Trustee", portions of the property, not to exceed one-half of the property in all, could be delivered to his son, beginning not sooner than the date his son reached age thirty-five. The testator expressly provided that his son " * * * will have no vested interest in any of said properties, unless and until it is turned over and delivered to him by the said Executor and Trustee." [1]

The record shows that T. N. Robbins, Jr., died at age forty-two, and that no part

1. "FIFTH: I further direct that my said Executor and Trustee pay to my son, T. N. Robbins, Jr., all of the income and earnings of said estate, after the deduction of all costs and expenses, so long as he may live, the said income to be paid to him monthly, quarterly or semi-annually as may be to his best interest, and the manner and time and method of paying the income to my said son shall be governed by the judgment of the Executor and Trustee herein, and should the income from said estate be insufficient for the support and maintenance of my said son, T. N. Robbins, Jr., then I hereby expressly authorize my said Executor and Trustee, in its discretion, to use any portion of the corpus or principal of said estate for the support and maintenance of my said son.

SIXTH: I further direct that when my son, T. N. Robbins, Jr., has reached the age of thirty-five (35) years, that if he is in good health and exercising good business judgment and is carrying on his business and conducting it in a business-like manner that said bank, as Executor and Trustee, using its own discretion, may turn over and deliver to him one-fourth (¼) of the estate then on hand, either in money, securities, or land, or either of them, and likewise when he has reached the age of forty-five (45) years and he is then conducting his business in a business-like manner and taking care of his property, and it is the judgment of the Executor and Trustee herein that he will continue to do so, it is hereby authorized to turn over and deliver to my said son one-third (⅓) of the remainder of said estate (making both advancements equal to one-half (½)); or should it be to the best interest of said son to not turn over and deliver either of these bequests at the age of 35 years or 45 years, but at a later date should it determine that said son is capable and willing to handle and manage said estate, then in that event it is hereby authorized to deliver any part or all of one-half (½) of the estate then on hand, it being understood that my said son, T. N. Robbins, Jr., will have no vested interest in any of said properties, unless and until it is turned over and delivered to him by the said Executor and Trustee."

of the estate was ever turned over to him. The residue of the estate therefore actually consisted of all testator's property except such as was used for the benefit of T. N. Robbins, Jr. prior to his death.

Paragraph SEVENTH of the will dealt with the interest of the child or children of T. N. Robbins, Jr., "that are living at his death." That paragraph is quoted:

"At the death of the said T. N. Robbins, Jr., I direct that all the rest and residue of said property then held by said bank as Executor and Trustee be delivered to the child or children, share and share alike; provided that said bank as Executor and Trustee will continue to handle and manage said estate until his youngest child reaches the age of twenty-one (21) years, then it is to be delivered to them in fee, share and share alike; provided, however, said bank after the death of the said T. N. Robbins, Jr. will continue to pay out the net income to the child or children of the said T. N. Robbins, Jr., until the youngest has reached the age of twenty-one (21) years."

In paragraph EIGHTH the testator provided that if T. N. Robbins, Jr., should " * * * die without leaving a child or children living at the date of his death, then and in that event I direct that my executor and Trustee deliver all of the residue of said estate" to the Methodist Home operated in Waco, Texas.

In the last and NINTH paragraph the testator directed the "Executor and Trustee" in keeping accurate records, and expressly authorized employment of attorneys and accountants in connection with administration of the estate. The testator also directed that all "accounts and expenses are to be paid, including five percent (5%) commission on all receipts and disbursements, prior to the distribution as above set out."

In applying the rules that we must ascertain the intention of the testator from the language he used and in search of such intention we may also consider provisions of the will as a whole and circumstances surrounding its making, we reach these conclusions. The testator, for reasons not stated in the will and not disclosed by the record, provided that his son, T. N. Robbins, Jr., would have a life estate in testator's property, from which he would receive income to be paid by the bank as executor and trustee. The bank was authorized to invade the corpus of the trust if needed to support the son, and if, in the judgment of the executor and trustee, the son could manage property turned over to him, one-fourth of the estate could be placed in him at age thirty-five and another one-fourth at age forty-five. The record shows that although T. N. Robbins, Jr., lived until he was forty-two years old, the bank never turned over any part of the property to him because he was not considered "capable of handling and managing the property."

The will expressly provided that T. N. Robbins, Jr., would "have no vested interest * * * unless and until [the property] * * * is turned over and delivered to him by the * * * Executor and Trustee." The testator further provided, in paragraph FOURTH that all mineral interest in part of the land be "kept intact" to "pass with the residue of my estate as hereinafter stated."

We think it apparent from the will that the testator considered the probability that his son would never be able to "handle and manage" the property of the estate. T. N. Robbins, Jr., was twenty-eight years old when his father made the will, was thirty-three when his father died, and although the son lived until he was forty-two, his father's executor and trustee declined to entrust any part of the estate to him, although the bank was authorized to deliver over a period of time up to fifty percent of the property, beginning at the time the son reached age thirty-five. The testator provided in effect that half the estate, or, under circumstances of his son not being

able to manage any part of the property, all of the estate, remaining after the life of T. N. Robbins, Jr., was to be delivered in fee, share and share alike, to the child or children then living when the youngest child reached age twenty-one. After the death of T. N. Robbins, Jr., the will provided, the income from the estate theretofore paid him would be paid to his child or children until the youngest reached twenty-one years of age when the properties were to be delivered to them in fee. The testator directed that the bank continue to handle and manage the estate "until the youngest child reaches [21] * * * *then* it is to be delivered to them *in fee* * * * *"* (Emphasis added)

To say that the testator intended that the remainder or residue of his estate would vest in the grandchild or grandchildren at their father's death would be to say that the testator was willing that part of the property would pass by intestacy in event one of the children should die before the youngest attained age twenty-one.

Under the will we believe the testator intended to set up a life estate for his son, to care for him during his life because he was not regarded as capable of managing the property himself, and to continue the trust after the son's death for the benefit of the son's children until such time as all the children had reached their majority, that time being when the youngest became twenty-one years old. At termination of the trust, the testator provided that *"then* it [the estate] is to be delivered to them [children] *in fee,* share and share alike * * * *"* (Emphasis added) We cannot read into such provisions of the will any intention of the testator that any of the property could come into the hands of any person except T. N. Robbins, Jr., up to one-half of the estate, and the children of T. N. Robbins, Jr. The testator provided that if no child survived his son, the estate would go to The Methodist Home at Waco. Certainly, these provisions do not allow for devise, expressly or by intestacy, to persons other than young Robbins or his children.

We hold the view that the testator did not intend that any interest in his estate, save the beneficial interests normally derived from a life estate, would be held by any person, and no title would vest in the property of the estate, until the youngest grandchild attained his or her majority. We think the testator intended further that no part of his estate would come into the hands of any individual not his blood kin and lineal descendant.

■  We are aware of the general principle that the law favors construction of a will that will permit the earliest possible vesting of an estate. This does not appear to be an inflexible rule, and typical application of the principle has been to prevent operation of the rule against perpetuities (Rekdahl v. Long, 417 S.W.2d 387, Tex. Sup.1967) or to avoid total or partial intestacy (Crowley v. Vaughan, 347 S.W.2d 12, Tex.Civ.App.1961, writ ref.; Rust v. Rust, Tex.Civ.App., 211 S.W.2d 262, affirmed 147 Tex. 181, 214 S.W.2d 462).

■  In the case before us, to carry out what we consider to be the intentions of the testator will avoid partial intestacy of his estate; and the rule against perpetuities is not a matter of concern under the facts. If it can be said that the intention of the testator was that the estate would not vest in his grandchildren until the youngest reached age twenty-one, we can also say that this was a means by which the testator fixed the date when title would vest in the children. Until that date arrived, it was provided by the testator that the children, like their father before them, would receive the income from the properties which the bank was directed to continue managing as trustee until the youngest became twenty-one. The trust, therefore, was to be continued until the date the bank was authorized to deliver the residue of the estate in fee to the children share and

458

share alike. These intentions of the testator were expressed in paragraph SEVENTH, each such provision coupled with the others and contained in the same sentence. Each provision must be read with the other provisions, and to separate them is to destroy their total meaning and thereby lose the expressed intention of the testator.

With the death of Thomas Wayne Robbins in November of 1969 the "youngest" child referred to by the testator ceased to be the gauge by which the date for delivery of the estate might be ascertained. The testator used the term "child or children," indicating that he did not have a specific number of children in mind, nor did he designate any child or children by name or by any other identifiable term except as offsprings of his son. If there had been only one child, the "youngest" would have been that child. If there had been only two children, the "youngest" would have been the younger of the two. We think the testator meant only that the estate would be delivered when the child, if only one, or when all the children, if more than one, reached majority, which would be when the "youngest" became twenty-one years old.

The law question here is whether the remainder to the life tenant's children was rendered contingent or defeasible by the age provision. On the particular language of the testator in this case, we hold that the remainder was contingent pending attainment of the specified age of the youngest. The word "youngest" was not used grammatically as a form of denoting strict comparative degree. As we have observed, at the time the testator made his will only one grandchild was in being, and the testator referred to his son's progeny who might survive him as "child or children." (See 57 A.L.R.2d 103, sec. 19, p. 176 et seq.)

We have concluded that the property of the estate, under the testator's will, did not vest upon the death of T. N. Robbins, Jr., but will vest according to provisions of the will directing that delivery of the fee shall be made to the surviving children when the youngest attains age twenty-one, at which time the trust terminates.

Briefs have been filed in behalf of the two surviving daughters of T. N. Robbins, Jr., by their guardian *ad litem* as appellants, and in behalf of their mother, now Mrs. Hazel Ruth Pickering, and for Mrs. Pickering's two sons, Freddie Eugene Spieler and John Howard Spieler, as appellees. The San Angelo National Bank, as independent executor and trustee of the estate of testator, a nominal appellee on appeal, filed a statement disclaiming any interest in the outcome of this cause, but asking for "legal construction and declaration of the rights of the various parties arising under the terms" of the will.

We hold that the testator intended, under the present fact situation, that the estate would be delivered and vest in the two daughters, share and share alike, when the younger of them reaches her majority, which will be October 29, 1973. If the younger daughter should not live to reach age twenty-one, and be survived by her older sister, then the estate will vest in the surviving daughter upon the death of her younger sister, if the older should at that time be twenty-one years old or older, or if not, then when the older sister shall reach her majority, which will be February 8, 1972. In the event neither granddaughter lives to attain age twenty-one, then the residue and remainder of the estate will vest in the Methodist Home at Waco, the alternate devisee of the remainder.

The judgment of the trial court is reversed and judgment is rendered as stated.