Allan ZIDELL et al., Appellants,

v.

JOHN HANCOCK MUTUAL LIFE INSURANCE CO., Appellee.

No. 18856.

Court of Civil Appeals of Texas, Dallas.

June 24, 1976.

Rehearing Denied July 22, 1976.

Gerald R. Coplin, Passman, Jones, Andrews, Coplin & Holley, Dallas, for appellants.

William P. Fonville, Dallas, for appellee.

GUITTARD, Justice.

This suit concerns whether the proceeds of casualty insurance on an apartment complex should be paid to the mortgagors or to the mortgagee. We hold that even though the mortgagors have repaired the property at their own expense, the mortgagee is entitled to the proceeds under the deed of trust, which contains an assignment of the policy and its proceeds to the mortgagee as security for the debt.

The case was tried on a stipulation of facts from which the following statement is taken. Allan and Alvin Zidell were owners of an apartment complex subject to a deed of trust securing a note for $1,850,000 held by John Hancock Mutual Life Insurance Company. The note and deed of trust limit the liability of the Zidells to their interests in the property securing the note. Paragraph 4 of the deed of trust requires the Zidells as grantors to keep the property repaired and also to keep it insured in terms satisfactory to the beneficiary. This paragraph further provides that all policies are payable in case of loss to the beneficiary, that all amounts recoverable under any policy are assigned to the beneficiary, and that in the event of loss the amount collected shall, "at the option of the beneficiary" be (a) applied on the indebtedness, (b) used to fulfill any of the covenants of the grantors, (c) used to replace or restore the property, or (d) released to the grantors. The full text of this paragraph is copied in the margin.[1]

---

1. That grantors will at all times during the continuance of this trust, as long as said note remains unpaid, keep protected and in good order, repair and condition at all times, the buildings and improvements (including fixtures) now standing or hereafter erected or placed upon the granted premises, and any and all appurtenances, apparatus and articles of personal property, including but not limited to, furniture, furnishings and equipment, now or hereafter in or attached to or used in connection with said buildings or improvements, promptly replacing any of the aforesaid which may become lost, destroyed or unsuitable for use, and will not do or permit any act by which the value of the granted premises may be impaired; that grantors will comply with, or cause to be complied with, all statutes, ordinances and requirements of any governmental authority relating to the granted premises; that grantors will keep insured the aforesaid real and personal property, and the interests and liabilities incident to the ownership thereof, in manner, forms, companies, sums and length of terms satisfactory to the beneficiary; that all insurance policies are to be held by and, to the extent of its interests, are to be for the benefit of and payable in case of loss to the beneficiary, and the grantors shall deliver to the beneficiary a new policy as replacement for any expiring policy at least fifteen (15) days before the date of such expiration; that all amounts recoverable under any policy are hereby assigned to the beneficiary, and in the event of a loss the amount collected shall, at the option of the beneficiary, be used in any one or more of the following ways: (a) applied upon the indebtedness secured hereby, whether such indebtedness then be matured or unmatured; (b) used to fulfill any of the covenants contained herein as the beneficiary may determine; (c) used to replace or restore the property to a condition satisfactory to the beneficiary; (d) released to the grantors; and the beneficiary is

The Zidells procured the required insurance coverage. On April 13, 1974, the buildings and their furnishings were damaged by wind and hail. The Zidells repaired the damage and made claim against the casualty insurer for the loss. On July 12, 1974, the insurer issued its draft for $30,987.69 payable jointly to the Zidells and John Hancock Mutual Life Insurance Company.

When the loss occurred the note was not in default. The Zidells failed, however, to make the payments due on June 1 and July 1, 1974, and on September 4, 1974, Hancock notified them that it had accelerated the maturity of the remaining installments. On March 4, 1974, the trustee sold the property under the deed of trust, and Hancock bid it in for $1,738,757.76, the amount of the principal balance, without any amount to cover the interest or the attorney's fee provided in the note.

Both the Zidells and Hancock claimed the proceeds of the draft from the insurer, and this litigation resulted. By agreement, the proceeds were paid into the registry of the court.

The stipulation recites that Hancock gave the Zidells no notice of its exercise of the option to apply the proceeds of insurance on the amount of the note before completion of the repairs. The stipulation contains no information as to when Hancock learned that the loss had occurred or that the Zidells had undertaken to repair the damage. The Zidells alleged in their pleading that Hancock had failed and refused to endorse the draft in their favor. Hancock answered that it "exercises its option to apply the amount collected upon the indebtedness due it on the promissory note and will so apply such proceeds when it obtains possession of the draft."

The trial court concluded that under paragraph 4 of the deed of trust, Hancock had "the unrestricted option" to apply insurance proceeds on the indebtedness secured by the deed of trust, that it had

exercised that option, and, therefore, was entitled to the proceeds. Accordingly, judgment was rendered for Hancock, and the Zidells have appealed.

The Zidells' principal contention here is that the beneficiary's "option" to apply the proceeds of the insurance claim to the indebtedness or to use it to replace or restore the property must be exercised within a reasonable time by notice to the grantors or otherwise, and that no such exercise of the option is established by the stipulated facts. They do not specify the event from which the "reasonable time" began to run. Since the stipulation does not state when Hancock first had notice or knowledge of the loss or of the repairs undertaken by the Zidells, we find no basis in the record to say that a reasonable time had expired before Hancock filed its pleading stating that it "exercises its option" to apply the proceeds to the balance of the note. That balance included interest and attorney's fees which were not extinguished by the foreclosure sale, as was the principal indebtedness. Consequently, we cannot agree with the Zidells that Hancock has lost its contract right to apply the insurance proceeds to the amount of the note by failing to exercise its option to do so within a reasonable time.

■ Moreover the "option" in paragraph 4 is not like an option to purchase, which must be exercised within a specified time to avoid loss of contract rights. It does not involve a continuing offer that expires if not accepted by a certain date. This paragraph does not provide, even by implication, that the beneficiary will lose its contract right to apply insurance proceeds on the indebtedness if it fails to act promptly. Rather, we understand this provision to mean that all insurance policies and their proceeds are assigned to the beneficiary, who is given its choice as to how such proceeds shall be applied. Mere lapse of time does not shift this choice to the grantors. The Zidells have urged no estoppel or

hereby irrevocably appointed by the grantors as attorney of the grantors to assign any policy in the event of the foreclosure of this deed of

trust or other extinguishment of the indebtedness secured hereby.

other circumstance that would preclude Hancock from making that choice.

The Zidells also contend that they are entitled to the insurance proceeds because they paid for the insurance and they restored the property at their own expense. To support this contention they cite the early decision of this court in *Huey v. Ewell,* 22 Tex.Civ.App. 638, 55 S.W. 606 (Dallas 1900, no writ). In that case, under similar facts, the mortgagor was held entitled to the insurance proceeds although he had, in effect, assigned the policy to the mortgagee. The court reasoned that since the mortgagee had the benefit of the covenant to repair, which was the "covenant of greatest dignity," and since the mortgagor had paid the insurance premium and also the cost of the repairs, it would be inequitable to award the insurance proceeds to the mortgagee.

We do not accept the *Huey* reasoning as sound. Even if one provision of a contract may be considered as of greater "dignity" than another, the provision of lesser "dignity" cannot properly be disregarded unless the two are inconsistent. We find no inconsistency between the covenant to repair and the assignment of insurance proceeds, since the mortgagees can comply with the covenant by using their own funds if the mortgagee insists on applying the proceeds to the debt. Neither can we disregard the assignment of insurance proceeds on the ground that to give it effect would be inequitable. Courts are not at liberty to rewrite the contract between the parties without pleading and proof of fraud or mutual mistake. *Milliken v. Callahan County,* 69 Tex. 205, 6 S.W. 681, 684 (1887); *see British America Assurance Co. v. Miller,* 91 Tex. 414, 44 S.W. 60, 62 (1898). The assignment of the proceeds from a policy of insurance on mortgaged property is a proper subject of contract. *Schultz v. Morton,* 101 S.W.2d 373, 375 (Tex.Civ.App.—Dallas 1936, writ ref'd). We know of no reason of public policy that would prevent a mortgagor from agreeing that the mortgagee may apply the insurance proceeds to the indebtedness, even when the property has been restored at the mortgagor's expense.

Nor do we find such an arrangement to be grossly inequitable. A mortgagor gets the benefit of insurance proceeds when they are applied to his debt. This benefit is not affected in the present case by the provision relieving the Zidells of personal liability on the note. In the absence of foreclosure, application of the insurance proceeds on the note would reduce the outstanding indebtedness for which the property would stand as security, and thus the Zidells would have the opportunity to clear that indebtedness by paying a lesser sum. Their default and the consequent foreclosure do not give them any additional right to these proceeds. So long as the entire indebtedness, including both principal and interest, has not been paid, the insurance proceeds, as well as the other property, stand good for the balance due on the note, according to the express agreement of the parties. The trial court properly gave that agreement full effect.

All of the Zidells' points have been considered, and all are overruled for the reasons stated.

Affirmed.