In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________


 

NO. 09-08-00413-CV


____________________



STATEWIDE BANK AND SN SERVICING CORPORATION, Appellant



V.



ANITA KEITH, Appellee






On Appeal from the 60th District Court


Jefferson County, Texas


Trial Cause No. B-176,673






 OPINION


 This appeal concerns two central issues. The first is whether the mortgagee,
Statewide Bank ("Statewide"), breached its duties under a deed of trust to its mortgagor,
Anita Keith. The second concerns whether the evidence sufficiently supports the jury's
award of $45,000.00 for Statewide's breach.

 Following a jury trial, the jury found that Statewide breached the deed of trust, found
Keith had not committed any breach, awarded damages of $45,000.00 for the breach of
contract, awarded Keith additional amounts for her attorneys' fees, and awarded prejudgment
and post-judgment interest. We hold that the evidence is sufficient to support the jury's
finding that Statewide breached the deed of trust, but factually insufficient to support the
$45,000.00 awarded by the jury for Keith's actual damages. We reverse the judgment and
remand the cause for a new trial. Background

 Keith financed her purchase of a home in November 2000, and secured it with a
vendor's lien and deed of trust. Keith's deed of trust, among other obligations, required her
to keep the property in good repair and maintain adequate insurance, including windstorm
coverage. As required by the deed of trust, Keith had obtained windstorm coverage.

 Among the mortgagee's rights under the deed of trust, the mortgagee had the right to
receive any insurance proceeds paid to the mortgagor that resulted from damage to Keith's
home. That provision, which is now at issue, states: "[Mortgagee] may apply any proceeds
received under the insurance policy either to reduce the note or to repair or replace damaged
or destroyed improvements covered by the policy."

 In September 2005, Hurricane Rita severely damaged Keith's home. Keith filed a
claim under her homeowners' insurance policy. After some delay, on February 17, 2006,
Keith received an insurance draft for $24,894.60 for the damages the hurricane had caused
to her home. The carrier made the draft payable to Keith, her attorney, and Statewide. (1) At
the time of the insurance company's payment, Statewide was Keith's mortgagee, as
Statewide had acquired Keith's mortgage shortly after the hurricane. (2)

 After receiving the draft from the insurance company, Keith's attorney forwarded the
draft to Statewide with instructions requesting that Statewide endorse the check and return
it "so as to pay expenses and begin repairs." Instead, the funds were deposited into the
account of Statewide's agent, SN Servicing Corporation ("SNSC"). Although Keith sent the
proceeds to the address Statewide had instructed its mortgagors to send mortgage payments,
Statewide explained that payments received at that address were actually received by another
bank with whom it had a relationship. Its deposit relationship with the other bank required
that funds sent to the designated address be deposited into an SNSC account for Statewide. (3)

 After depositing the funds, the depository bank then forwarded the letter from Keith's
attorney that had accompanied the draft to SNSC. Statewide's witness testified that the letter
from Keith's attorney, received February 22, 2006, was Statewide's first notice that Keith's
home had suffered damaged. (4) 

 After receiving the letter from Keith's attorney that requested Statewide endorse the
insurance draft, and pending further investigation of Keith's loss, Statewide placed the
$24,894.60 in a suspense account. At that point, Statewide did not try to contact Keith or her
attorney regarding the circumstances leading to the insurer's payment. On March 9, 2006,
when the endorsed check had not been returned, Keith's attorney called and spoke to a
Statewide representative. Keith's attorney demanded that Statewide return the draft. On
March 22, 2006, when the draft was not returned, Keith's attorney filed suit against
Statewide and SNSC. Keith's original petition alleged claims based on several theories,
including breach of contract, theft, and breach of fiduciary duty.

 On April 14, 2006, shortly after filing an answer to the petition, the attorney for
Statewide and SNSC sent Keith's attorney a letter that advised:

 My client is prepared to disburse the proceeds to Anita Keith and her
contractor. Please provide me with the name of your client's contractor along
with invoices for work done to repair the property or a contract for work to be
done as soon as possible. 


In a letter dated April 17, 2006, Keith's attorney expressly rejected Statewide's requests. (5) Later, when Keith responded to Statewide's discovery responses, Keith apparently
produced invoices for work on her home. (6) On September 18, 2006, after Statewide received
Keith's invoices in discovery, SNSC sent Keith a check, in the amount of $13,394.03, an
amount that is equal to the total sum for the invoices Keith indicated she had paid as of the
date of her interrogatory answers. However, Keith's interrogatory responses also reflect that
she had "cleaned up debris, hauled off trees, . . . and removed damaged carpet," but she did
not attach invoices or receipts reflecting amounts for which she sought reimbursement for
her own work. Although SNSC's check, payable to Keith, did not include anything for
Keith's work, it was also clear that the check was not tendered to settle any of Keith's
claims-a cover letter with the tendered check stated: "SN Servicing Corporation will
continue to disburse any funds held for this account as invoices or other evidence of repairs
are provided." On September 21, 2006, Keith's attorney returned SNSC's check, and stated: 
"My client will settle for nothing less than the full amount owed-attorney's fees, cost of
court and interest as provided by law."

 Other than requesting that Keith provide Statewide with contracts and invoices, and
directing SNSC to make payments for invoices Keith had paid as of September 2006, the
record does not contain any additional evidence that Statewide or its agents did anything
more to fulfill Statewide's obligation under the deed of trust to either repair Keith's home
or apply the proceeds to the loan's balance. For instance, SNSC and Statewide apparently
never inspected Keith's property after the hurricane or before the conclusion of the trial. An
inspection would have allowed Statewide to evaluate whether the home was in good
condition, as required by the deed of trust. Nor did Statewide or its agents determine an
appropriate value for the work that Keith or others performed on the home. Also, SNSC and
Statewide never advised Keith of any additional repairs that Statewide required of Keith. 
Finally, neither SNSC nor Statewide claimed that Keith had breached the deed of trust by
failing to keep the property in good repair; instead, at trial, Statewide and SNSC argued that
Keith breached the deed of trust by refusing their tendered partial payment and by refusing
to provide them with invoices in an amount that equaled or exceeded the proceeds it held. 
By its verdict, the jury found that Statewide breached the deed of trust and rejected
Statewide's claim that Keith breached the deed of trust. 


Statewide's Breach


 In its first issue, Statewide challenges the legal and factual sufficiency of the evidence
to support the jury's finding that it breached the deed of trust. When analyzing a legal
sufficiency claim, we view the evidence in the light most favorable to Keith, the prevailing
party, crediting favorable evidence if reasonable jurors could, and disregarding contrary
evidence unless reasonable jurors could not. See City of Keller v. Wilson, 168 S.W.3d 802,
807 (Tex. 2005). The evidence is legally sufficient if it enables "reasonable and fair-minded
people to reach the verdict under review." Id. at 827. In determining the factual sufficiency
of the evidence, courts of appeals must weigh all the evidence, both for and against the
finding. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001). In reviewing a factual
sufficiency challenge to a finding for which the appellee had the burden of proof, we "set
aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust." Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

 Generally, Statewide argues that it acted reasonably in requiring Keith to provide it
with invoices and contracts to protect its interest in making sure that the insurance proceeds
were spent on the repair of Keith's home. Statewide further asserts that none of the evidence
indicates it acted unreasonably. However, Statewide's brief fails to address one of the
questions implicitly resolved by the jury's verdict-whether Statewide made a timely election
of its option to either repair Keith's home or apply the proceeds to the principal of the
mortgage. Statewide argues that it still maintains a right under the deed of trust to elect to
apply the insurance proceeds to the mortgage balance. Specifically, Statewide argues: 

 The Deed of Trust, however, imposes no duties or obligations on Statewide,
as the Beneficiary. Rather, Statewide receives only certain permissive rights
(obtained in consideration of the mortgage), which it may or may not choose
to exercise, as it deems to be in its interest.


 In contrast, Keith contends that the deed of trust did not require her to provide
Statewide with invoices or contracts for the repair of her home. While Keith recognizes that
Statewide could place some conditions on the release of the funds it held, she complains that
instead of doing so, Statewide "chose to do nothing until [Keith] filed suit." In summary,
before addressing whether Statewide breached the deed of trust, we must first determine if
Statewide timely exercised its option to either repair Keith's property or to instead, apply the
proceeds to the outstanding mortgage. 

 In analyzing whether Statewide made a timely election, we first consider the time
period within which Statewide was required to elect its option. The deed of trust provides
no specific time. Nevertheless, where contracts do not specify the time within which a party
must elect an option, the law presumes that the contracting parties intended the option be
exercised within a reasonable period of time. See Inimitable Group, L.P. v. Westwood Group
Dev. II, Ltd., 264 S.W.3d 892, 899-900 (Tex. App.-Fort Worth 2008, no pet.) ("If no time
for performance is stated in the contract, the law may imply a reasonable one if the contract
is 'sufficiently definite for a court to be able to fix the time when it can be enforced.'")
(quoting Moore v. Dilworth, 142 Tex. 538, 179 S.W.2d 940, 942 (1944)). 

 We also consider the purpose of the option at issue when determining whether it was
exercised in a timely manner. See Mattern v. Herzog, 367 S.W.2d 312, 318 (Tex. 1963). 
With respect to agreements that create options, "[i]t has been stated generally that in options,
'time is of the essence.'" Id. (quoting Lusher v. First Nat'l Bank of Fort Worth, 260 S.W.2d
621, 626 (Tex. Civ. App.-Fort Worth 1953, writ ref'd n.r.e.)); see also Maupin v. Dunn, 678
S.W.2d 180, 183 (Tex. App.-Waco 1984, no writ) (reasonable time implied with respect to
a purchase option in a real estate contract). 

 An obvious purpose of a mortgagee's option to repair is to allow it some control over
how the insurance funds are used to protect the mortgagee's damaged collateral. But, the
mortgagee's interest is not the only consideration, as the mortgagor also has an interest in
making financial decisions that will impact the mortgagor's interests in the property. With
respect to the length of time a mortgagee may take in making its election, the question arises
whether the mortgagee could withhold its decision for such a length of time that the
mortgagor could be forced to make a decision to repair the property without knowing if the
mortgagee had elected to repair the property. Or, stated another way, can the mortgagee 
decide, after the mortgagor repaired the property, to apply the insurance proceeds to the
mortgage balance instead of to the property's repair? With respect to that question, we think
the answer is no.

 Because both have an interest in knowing which option the mortgagee has chosen, 
the interests of both the mortgagor and mortgagee are protected by requiring the mortgagee,
under an agreement that fails to specify otherwise, to exercise its option within a reasonable
time. The mortgagor, knowing the mortgagee's election, can then determine what it can
reasonably afford, if anything, in repairing the mortgaged property. 

 In this case, in light of the amount of Keith's outstanding mortgage compared to the
insurance proceeds received, we believe that Statewide, acting in a reasonably prudent
manner, was on notice that Keith's home had fairly extensive damage. Thus, aware of
significant damage to Keith's home, Statewide needed to inform Keith of its election within
a fairly short period after receiving the proceeds in order to allow Keith to then decide what
to do about repairing her home.

 After it received the insurance funds, the evidence tends to show that Statewide did
not undertake reasonable efforts to contact Keith or to notify her of its election on the use of
the insurance proceeds. Over two weeks passed during which Statewide apparently did
nothing to contact Keith. On March 9, 2006, after Keith's attorney had received no response
to his letter that requested Statewide endorse and return the insurance draft, Keith's attorney
contacted Statewide. William Fogleman, SNSC's in-house counsel and Statewide's
authorized agent, testified that on its first contact, Statewide advised Keith of Statewide's
intent to elect to repair Keith's home. (7) Even if a jury agreed that Statewide stated an intent
to repair on the date of their initial contact, a mere statement of an intent to exercise an
election is not equivalent to the exercise of an option to repair. In our opinion, a stated intent
under such circumstances is ambiguous, as it can also be considered a reservation of the right
to make the decision depending upon future information. See generally Midland Judicial
Dist. Cmty. Supervision & Corrs. Dept. v. Jones, 92 S.W.3d 486, 487-88 (Tex. 2002); Harris
v. Hines, 137 S.W.3d 898, 907-08 (Tex. App.-Texarkana 2004, no pet.). We conclude that
the record does not establish that Statewide exercised its option on March 9 by verbally
informing Keith's attorney of its decision to affirmatively use the insurance proceeds that it
held to repair Keith's home.

 The record also reflects that on March 28, 2006, Statewide, shortly after receiving the
insurance proceeds, recognized that it needed to perform an inspection of Keith's property. 
An internal note from its loan file on Keith's loan states: "Do we have an inspector in the
Beaumont, Texas area. I need an inspecti[on] due to property damage. [Keith's address]
Please let me know, as soon as possible." Nevertheless, the evidence indicated that
Statewide never sent anyone to inspect Keith's home.

 The record also reflects that Statewide first made a written request asking Keith to
provide it with invoices on April 14, 2006, and in that same letter advised Keith's attorney
that Statewide was "prepared to disburse the proceeds to Anita Keith and her contractor." 
However, Statewide's April 14 letter does not foreclose the possibility that it was still
gathering information; thus, after receiving invoices, the letter does not foreclose Statewide
from later electing to apply the insurance proceeds to the mortgage's balance. 

 When in mid-September, 2006, Keith provided Statewide with invoices for repairs, (8)
Statewide elected to pay all of the invoices that Keith provided in full, totaling $13,394.03. 
In the letter transmitting the reimbursement for repairs reflected in these invoices, Statewide
stated that "SN Servicing Corporation will continue to disburse any funds held for this
account as invoices or other evidence of repairs are provided." After Keith's attorney
rejected the partial payment that Statewide tendered, Fogleman indicated that Statewide put
the matter "on hold pending the outcome of the lawsuit." Statewide tendered no further
amounts to Keith for repairs, apparently because Keith never provided additional invoices
and it never inspected her property to determine the property's state of repair. Therefore,
although we conclude that Statewide elected to apply $13,394.03 toward the repairs of
Keith's home as of September 18, 2006, the question remains whether, at that point,
Statewide continued to maintain the right to exercise an option over how the insurance
proceeds would be used.

 Generally, an expression that a party is ready, willing, and able to perform is not
generally sufficient to remove the issue from the jury of deciding whether a party is willing
to perform. See generally DiGiuseppe v. Lawler, 269 S.W.3d 588, 599-603 (Tex. 2008). 
Having reviewed all of the evidence, we conclude that Statewide's evidence is not conclusive
on the issue of its exercise of its option as of either March 9 or April 14. We hold that under
the circumstances here Statewide's expressed desire to receive invoices is not the equivalent
of having agreed to pay these invoices upon their receipt.

 Thus, we reach the question of whether Statewide continued to maintain a right to
elect an option under the deed of trust as of September 18, 2006, which is the date it tendered
some of the proceeds to Keith to reimburse her for repairs she had already performed. By
statute, mortgagees handling the proceeds of an insurer's payment on a mortgagor's property
are generally required to act fairly quickly to notify the homeowner "of each requirement
with which the insured must comply for the lender to release the insurance proceeds." Tex.
Ins. Code Ann. § 557.002(a) (Vernon 2009) (providing the mortgagor with ten days after
lender receives insurance payment to provide such notice). Then, once the homeowner
requests release of all or part of the proceeds, the mortgagee is required within ten days of
the homeowner's request to release the funds if the homeowner has supplied the information
the mortgagee required; otherwise, the mortgagee must provide notice to the homeowner that
"explains specifically: (A) the reason for the lender's refusal to release the proceeds to the
[homeowner]; and (B) each requirement with which the insured must comply for the lender
to release the proceeds." Tex. Ins. Code Ann. § 557.003 (Vernon 2009). Similar time
constraints existed at the time Keith executed the deed of trust governing the rights and
obligations of the parties in this case. See Act of May 24, 1993, 73rd Leg., R.S., ch. 688,
1993 Tex. Gen. Laws 2722-23. While the two separate statutory ten-day periods are not
specifically included in the deed of trust or otherwise incorporated into the party's agreement
as a contractual obligation, the short time limits established by the Insurance Code
demonstrate that parties to similar option agreements reasonably expect the mortgagee to act
to make a decision on utilizing the insurance proceeds fairly quickly. 

 In this case, it appears the funds were deposited into SNSC's account on February 23,
2006. At least two weeks elapsed before Statewide first had any contact with Keith's
attorney on March 9. That contact was initiated by Keith's attorney, not by Statewide. The
first contact initiated by Statewide occurred on April 14, 2006, approximately seven weeks
after its receipt of the insurance proceeds. Viewing the evidence in the light most favorable
to Keith, the jury could have reasonably concluded that on April 14 Statewide did not make
an election to pay for repairs and disbelieved Fogleman's testimony that Statewide stated an
intent to pay for repairs. 

 When Statewide tendered its check for partial payment in September 2006, it made
an election, but only with respect to a portion of the proceeds it held. Nevertheless, this
attempt to elect to repair occurred nearly seven months after its receipt of the insurance
proceeds. On this record, the jury could reasonably conclude that Statewide failed to timely
elect one of its two possible options and could have viewed Statewide's decision to continue
to hold the funds after receiving a demand for their release as a breach of Statewide's
obligations under the deed of trust. See generally Ellis v. Waldrop, 656 S.W.2d 902, 904
(Tex. 1983) (failure to timely exercise right of first refusal for real property resulted in
waiver of right); A.G.E., Inc. v. Buford, 105 S.W.3d 667, 673 (Tex. App.-Austin 2003, pet.
denied) (power to enforce option to purchase expires within reasonable time if no specific
time is provided in the agreement); Maupin, 678 S.W.2d at 183 (failure to timely exercise
option given to purchase real estate resulted in waiver). Given the purpose of the deed of
trust's option to repair provision, we conclude that reasonable and fair-minded people could
reach the verdict under review and conclude that Statewide breached the deed of trust by
failing to timely elect its option to repair Keith's property. See City of Keller, 168 S.W.3d
at 827. Further, having weighed all the evidence, both for and against the jury's finding, we
do not find the jury verdict to be so against the overwhelming weight of the evidence as to
be clearly wrong and unjust. Cain, 709 S.W.2d at 176. We overrule the arguments raised
by Statewide in issue one.

 Damages


 In issue two, Statewide challenges the legal and factual sufficiency of the evidence
to support the jury's damage award of $45,000.00. The trial court's judgment is based on
Keith's breach of contract issue. Statewide timely raised a complaint concerning whether
the jury's award was supported by legally sufficient evidence in its motion for judgment
notwithstanding the verdict.

 First, we note that "[t]he universal rule for measuring damages for the breach of a
contract is just compensation for the loss or damage actually sustained. By the operation of
that rule, a party generally should be awarded neither less nor more than his actual damages." 
Stewart v. Basey, 150 Tex. 666, 245 S.W.2d 484, 486 (1952); see also ExxonMobil Corp. v.
Valence Operating Co., 174 S.W.3d 303, 316 (Tex. App.-Houston [1st Dist.] 2005, pet.
denied). Keith's evidence demonstrated that through trial, Statewide had refused to comply
with her request to send her $24,894.60, the amount of the insurance proceeds that Statewide
withheld from her. Although Statewide asserted that the deed of trust allowed it to withhold
these proceeds, the jury's verdict determined that it lost that right by breaching the deed of
trust. Thus, we conclude that there is legally sufficient evidence to support an actual damage
award of $24,894.60. (9)

 The issue, therefore, becomes whether the evidence supports the additional damages
that exceed $24,894.60. In reviewing the record, we note that Keith's contract claim does
not include any claim for consequential or incidental damages, nor did Keith produce
evidence of any consequential damages. In her petition, Keith asserted a claim for breach
of contract damages for a "sum of at least $24,894.60." This amount represented the amount
Keith expected to receive from Statewide, also referred to as her expectancy damages. 
Expectancy damages are the most common measure of damages in a breach of contract case;
they are used to protect the plaintiff's interest in receiving the benefits of the contract. See
Qaddura v. Indo-European Foods, Inc., 141 S.W.3d 882, 888 (Tex. App.-Dallas 2004, pet.
denied). "Protecting this interest seeks to restore the non-breaching party to the same
economic position in which it would have been had the contract not been breached-thus
giving the party the benefit of its bargain." Id. at 888-89. 

 However, the jury's award exceeds the amount Keith alleged as her expectancy
damages. Keith's brief, in an attempt to explain why the jury's award exceeded $24,894.60,
argues that because the jury heard that Statewide wrongfully withheld funds from Keith and
then refused to undertake repairs or to apply the proceeds to the loan, the jury could conclude
that Keith's damages were $45,000.00. Keith offers no further explanation to explain or
justify the jury's award of a sum greater than the total amount Statewide had withheld. 

 We can also offer no explanation to support the jury's award of $45,000.00 in actual
damages. For breach of a contract, in addition to recovering attorney's fees, which in this
case were awarded separately, a plaintiff can recover economic damages but not exemplary
damages or mental anguish. Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 304 (Tex.
2006) ("For breach of contract, [Plaintiff] could recover economic damages and attorney's
fees, but not mental anguish or exemplary damages."); Stewart Title Guar. Co. v. Aiello, 941
S.W.2d 68, 72 (Tex. 1997) (holding mental anguish and exemplary damages unavailable for
breach of contract). While in addition to a party's expectancy interest, a contract damage
award can protect a party's restitution and reliance interests, such as the reasonable cost of
renting another place to live, Keith did not produce any evidence to support a recovery of
restitution. Further, Keith did not prove that she incurred increased costs in repairing her
home as a result of delays attributable to the timing of Statewide's exercise of its option
under the deed of trust. Most importantly, Keith's pleadings do not allege that she suffered
consequential damages, and the Texas Rules of Civil Procedure require that a party plead for
them. See Tex. R. Civ. P. 56, see also Cagle, Cherry & Kemp, The Classification of General
& Special Damages for Pleading Purposes in Texas, 51 Baylor L. Rev. 629, 666-668
(1999) (e.g., explaining that a party must specifically plead for incidental and reliance
damages). 

 While there is legally and factually sufficient evidence that Statewide breached the
deed of trust, and legally and factually sufficient evidence to support a damage award of
$24,894.60, we hold that there is not legally sufficient evidence to support the jury's award
of $45,000.00. Thus, because the evidence is not legally sufficient to support the entire
amount of damages, but sufficient to support some portion of the jury's award under the
correct measure of Keith's damages, we reverse the trial court's judgment against Statewide
and remand Keith's breach of contract claims against Statewide for a new trial. See Formosa
Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 51 (Tex. 1998).
Regardless, on retrial, and in the event Keith prevails, the trial court's judgment should make
it clear that Keith is not entitled to a double recovery. Specifically, in the event that another
trial results in a judgment against Statewide, the trial court's judgment should extinguish 
Statewide's option over the insurance proceeds and clarify that Keith's judgment is not an
award that is to be added onto other claims Keith may assert to the insurance proceeds held
by Statewide. 

 The remaining issues raised by Statewide would not result in greater relief. Therefore,
it is not necessary that we address them. Tex. R. App. P. 47.1.

SN Servicing Corporation


 In issue six, SNSC complains that the judgment provides Keith with an award of court
costs against SNSC even though the trial court granted its motion for instructed verdict. 
Keith did not appeal from the trial court's ruling on SNSC's motion for directed verdict. 
Rule 131 of the Texas Rules of Civil Procedure requires that trial courts award costs to the
successful party. Tex. R. Civ. P. 131. SNSC prevailed at trial. Therefore, we reform the
judgment to provide that Keith recover nothing on her claims against SNSC, and tax SNSC's 
costs against Keith. See Tex. R. Civ. P. 131; Martinez v. Pierce, 759 S.W.2d 114, 114 (Tex.
1988).

 In conclusion, the judgment in Keith's favor must be reversed because the jury's 
award is not fully supported by sufficient evidence. Tex. R. App. P. 44.1(b). Therefore, we
reverse the judgment Keith obtained against Statewide and remand all claims on her breach
of contract theory for a new trial. We further reform the judgment so that it provides that
Keith recover nothing against SN Servicing Corporation and that SN Servicing Corporation
recover its taxable costs against Anita Keith. In all other respects, the trial court's judgment
is affirmed. 

 AFFIRMED IN PART AS REFORMED, REVERSED AND REMANDED IN
PART.



 ____________________________

 HOLLIS HORTON

 Justice



Submitted on May 28, 2009

Opinion Delivered November 25, 2009

Before McKeithen, C.J., Gaultney and Horton, JJ.

1. Although the insurance policy is not among the exhibits contained in the record,
we assume that the insurance carrier included Statewide as a loss payee because Keith
procured a policy that complied with a covenant in the deed of trust; additionally, the
record does not indicate that Statewide asserted any claim that Keith breached the deed of
trust by failing to procure the endorsements or coverage required by the deed of trust.
2. As of December 16, 2005, according to Statewide's notice of the transfer of the
lien, Keith's unpaid balance on the mortgage was $22,578.15. Thus, the insurance
proceeds received by Statewide exceeded the outstanding balance on Keith's loan. 
3. Statewide refers to this arrangement as a "lock box," and explains that the
depository bank, upon receipt, placed the funds into the usual SNSC account for
Statewide's mortgage payments. The "lock box" agreement is not in the record.
4. The depository bank was not a party to the suit, and no issues were submitted to
the jury that addressed whether Statewide, as mortgagee, possessed the necessary authority
to allow its agents to deposit funds payable to it into the agent's account. Additionally, the
deed of trust has no express provision requiring the mortgagor to notify the mortgagee of
any damage to the property secured by the note, but does contain a provision that allows
the mortgagee to inspect the secured property at reasonable times.
5. Statewide does not raise an issue in its appeal that challenges the jury's failure to
find that Keith had breached the deed of trust.
6. The record does not contain evidence that establishes the exact date that Statewide
received these invoices; according to Keith, on September 8, 2006, she signed answers to
interrogatories, and one of her answers identified several specific invoices that she had
paid in return for services to repair her home.
7. The person with whom Keith's attorney spoke on March 9 did not testify at trial. 
As Fogleman was not the person with whom Keith's attorney spoke on March 9, 2006, it
appears unlikely that Fogleman had personal knowledge of what had occurred during that
initial conversation. Additionally, when asked whether he had advised Keith or her
attorney of Statewide's intent to repair the property, Fogleman stated that Statewide
advised Keith on the initial contact because "[w]e were trying to get the damage reports
so we could figure out what the repairs would need to be." One inference from the
evidence that Statewide was requesting damage reports is that it had not yet decided
whether to elect its option to repair Keith's home as it was still gathering information.
Additionally, when Keith's attorney testified, he did not address whether Statewide told
him that it had elected to repair Keith's property on March 9; as to what transpired during
his initial contact with Statewide, Keith's attorney testified that the Statewide person with
whom he spoke was "extremely evasive, and I really couldn't get any real answers out of
her."
8. Keith sent these invoices to Statewide as part of the lawsuit's discovery: they were
not sent in response to Statewide's April 2006 written request.
9. We note that the court's charge gave the jury no guidance on the proper standard
to consider in measuring Keith's damage award, but Statewide does not advance any
complaint on appeal regarding the charge.