COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


BONNIE SUE ROBERTS IN HER
CAPACITY AS INDEPENDENT
EXECUTRIX OF THE ESTATE OF
CHARLOTTE ROBERTS, DECEASED,

§

§

§

§

Appellant,

§

v.

§

WELLS FARGO BANK, N.A.,

§

Appellee.

No. 08-12-00113-CV

Appeal from the

Probate Court Number Two

of El Paso County, Texas

(TC# 2010-P00420)

**O P I N I O N**

Appellant, Bonnie Sue Roberts, appeals the trial court's partial summary judgment in favor

of Appellee, Wells Fargo Bank, N.A. (Wells Fargo).   We affirm.

**BACKGROUND**

In 1992, Roberts and her mother, Charlotte Roberts, obtained a loan for the purchase of a

home in El Paso.   The loan was secured by a deed of trust.   Wells Fargo subsequently became the

owner and holder of the loan and the deed of trust.   Several years later, Charlotte became disabled

and applied for a HUD loan, which required that the property be placed in Charlotte's name.

In May 2009, Charlotte died and Roberts became the sole interest holder in the property by

virtue of Charlotte's will.   Roberts had left her job to care for Charlotte during her illness but was

not rehired by her employer after Charlotte's death.   After September 2009, Roberts was unable

to refinance or make payments on the mortgage.

A year later, in September 2010, Roberts discovered hail damage to the roof of the home and reported it to her insurance company. The insurance company issued a check payable to Charlotte and Wells Fargo. On or about October 20, 2010, Roberts took the check to the Wells Fargo mortgage office, where a receptionist informed Roberts that monies would be distributed to the roofing contractor for repairs after she submitted the check and appropriate documents to Wells Fargo.[1] After Roberts submitted the documents and check as directed, a Wells Fargo employee informed Roberts that Wells Fargo would be applying the insurance proceeds to the delinquency on the mortgage rather than toward the repair of the roof. Roberts' roof was never repaired.

Roberts brought suit against Wells Fargo for conversion, breach of contract, and fraud.[2] Wells Fargo sought partial summary judgment on the claims related to the insurance proceeds and argued that its treatment of the insurance proceeds did not constitute conversion, breach of contract, or fraud but, rather, comported with the terms of the deed of trust which provides:

> Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property[.] . . . The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.
> In the event of loss, . . . . [a]ll or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property.

Roberts filed her response to the summary judgment motion and, on October 11, 2011, the trial court heard the motion.

---

[1] Roberts had been named Executrix of Charlotte's estate and had obtained letters testamentary.
[2] Roberts' suit included a trespass cause of action against Wells Fargo and Medina Property Services, L.L.C., which is not part of this appeal.

Two days later, on October 13, 2011, the trial court issued a letter in which it granted the partial summary judgment and directed Wells Fargo's counsel to prepare an order and submit it for the court's approval. The trial court's letter was faxed to the parties' counsel at 10:10 a.m. on the morning of October 13, 2011. On October 14, 2011, Roberts filed a nonsuit at 10:05 a.m. and sought an order of dismissal without prejudice. At 11:28 a.m. that same morning, the trial court filed its letter ruling with the clerk. Later that day, Wells Fargo issued to both the trial court and Roberts' counsel a proposed order of dismissal pursuant to nonsuit accompanied by a letter in which it argued that because Roberts' claims had been adjudicated by summary judgment, the trial court was required to dismiss those claims with prejudice.[3] On December 1, 2011, Roberts' claims subject to the trial court's October 13, 2011, pronouncement were dismissed with prejudice and the remaining claims without prejudice.

## DISCUSSION

Roberts presents two issues for our review. In Issue One, Roberts contends that partial summary judgment was not rendered below because the trial court's "ex parte" letter in which it declared the partial summary judgment: (1) did not constitute a "judicial pronouncement" as required by the Texas Supreme Court in *Hyundai Motor Company*, and (2) cannot constitute rendition of judgment because the letter was not filed with the clerk until after Roberts filed her nonsuit and it directed counsel to prepare a draft order. *See Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 855 (Tex. 1995). We disagree.

The Texas Supreme Court has declared that a judgment is rendered when the trial court's decision "is officially announced orally in open court, by memorandum filed with the clerk, or otherwise announced publicly." *Garza v. Tex. Alcoholic Bev. Comm'n*, 89 S.W.3d 1, 6 (Tex.

---

[3] The letter was filed with the clerk on December 1, 2011.

2002); *see also Keim v. Anderson*, 943 S.W.2d 938, 942 (Tex.App. – El Paso 1997, no pet.). A trial court's letter to the parties setting out its findings and requesting counsel to prepare a judgment has been held to be a memorandum that can serve as the rendition of judgment if it is filed with the clerk. *See Abarca v. Roadstar Corp. of Am.*, 647 S.W.2d 327, 327-28 (Tex.App. – Corpus Christi 1982, no writ).

The question of whether judgment has been rendered is distinct from the issue of whether the form of the judgment is final. *See Greene v. State*, 324 S.W.3d 276, 282 (Tex.App. – Austin 2010, no pet.) (issue of whether the form of judgment is final for appellate timetable purposes is distinct from question of whether judgment was actually rendered). Rendition of judgment is not synonymous with the signing of a written judgment. *Id.* Once judgment is rendered, the subsequent acts of drafting and signing a written form of judgment constitute merely "preparatory, *administrative* acts that would authenticate the record of the court's rendition." *See* TEX. R. CIV. P. 306a(1); *Burns v. Bishop*, 48 S.W.3d 459, 465 (Tex.App. – Houston [14th Dist.] 2001, no pet.) (emphasis in original).

Rule 162 permits a plaintiff to nonsuit at any time before introducing all of her evidence other than rebuttal evidence. TEX. R. CIV. P. 162; *Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex. 2011). However, under the rule, the dismissal shall not prejudice an adverse party's right to be heard on a pending claim for affirmative relief. TEX. R. CIV. P. 162; *In re Greater Houston Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 324 (Tex. 2009). As long as the defendant has not made a claim for affirmative relief, the plaintiff's right to take a nonsuit is unqualified and absolute. *Id.* "Granting a nonsuit is a ministerial act, and a plaintiff's right to a nonsuit exists from the moment a written motion is filed or an oral motion is made in open court, unless the

defendant has, prior to that time, sought affirmative relief." *Id.* at 325 (quoting *Greenberg v. Brookshire*, 640 S.W.2d 870, 872 (Tex. 1982)).

When nonsuit is filed after an unfavorable partial summary judgment has been entered against the claimant, the nonsuit is with prejudice as to those claims of which the judgment has disposed. *Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 854 (Tex. 1995); *see also Epps*, 351 S.W.3d at 868 n.7. This concept promotes judicial efficiency, protects parties from multiple lawsuits, and prevents inconsistent judgments through the preclusion of matters that have already been decided or which could have been litigated in a prior suit. *See In re Team Rocket, L.P.*, 256 S.W.3d 257, 260 (Tex. 2008); s*ee also Epps*, 351 S.W.3d at 870 (recognizing that nonsuit filed for the purpose of circumventing unfavorable legal restrictions or rulings are disfavored); *Yazdchi v. Bank One, Tex., N.A.,* 177 S.W.3d 399, 408 (Tex.App. – Houston [1st Dist.] 2005, pet. denied) (a party may not escape the effects of an unfavorable ruling on the merits by taking a nonsuit of its claims).

We conclude the trial court rendered its partial summary judgment on October 13, 2011, when the trial court officially announced its decision by memorandum, which was filed with the clerk on the following day. *Garza*, 89 S.W.3d at 6; *see also Keim v. Anderson*, 943 S.W.2d 938, 942 (Tex.App. – El Paso 1997, no pet.); *Rhima v. White*, 829 S.W.2d 909, 913 (Tex.App. – Fort Worth 1992, writ denied) (decision of trial court announced by letter directed to the parties constitutes rendition of judgment when no announcement is made in open court). Because the trial court rendered partial summary judgment in favor of Wells Fargo before Roberts filed her nonsuit, the trial court properly dismissed with prejudice Roberts' claims adjudicated by the summary judgment. Issue One is overruled.

5

In Issue Two, Roberts contends the trial court erred in granting partial summary judgment because a genuine issue of material fact exists regarding whether Wells Fargo timely elected under the deed of trust to apply the insurance proceeds to the reduction of Roberts' indebtedness rather than repair the roof of the home pursuant to the deed of trust.

We first consider whether Roberts' second issue is properly before us. In her pleadings, Roberts did not raise the timeliness of Wells Fargo's election regarding application of the insurance proceeds as a claim, as an element of any cause of action, or as a genuine issue of material fact. In her response to Wells Fargo's summary judgment motion, Roberts asserted that the issue of whether Wells Fargo exercised its option within a reasonable amount of time precludes summary judgment.

A defendant is "not required to guess what unpleaded claims might apply and negate them." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006). However, when a nonmovant asserts a claim for the first time in its summary judgment response, the movant has two options: (1) object that the claim was not pleaded, or (2) respond on the merits and try the issue by consent. *Id.*; *see Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991) ("The party who allows an issue to be tried by consent and who fails to raise the lack of a pleading before submission of the case cannot later raise the pleading deficiency for the first time on appeal."). When the latter course is chosen, the claim is placed squarely before the trial and appellate courts. *Via Net*, 211 S.W.3d at 313.

The record before us fails to demonstrate that Wells Fargo ever objected to Roberts' unpleaded timeliness-of-election claim. Therefore, we find that Wells Fargo has chosen to try this claim by consent. *Id.*

*Standard of Review*

We review a trial court's decision to grant a motion for summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *E.B.S. Enterprises, Inc. v. City of El Paso*, 347 S.W.3d 404, 407 (Tex.App. – El Paso 2011, pet. denied). Summary judgment is appropriate when there is no genuine issue as to any material fact and judgment should be granted in favor of the movant as a matter of law. TEX. R. CIV. P. 166a(c); *E.B.S. Enterprises, Inc.*, 347 S.W.3d at 407; *Melendez v. Padilla*, 304 S.W.3d 850, 852 (Tex. App. – El Paso 2010, no pet.).

A fact question exists when the summary judgment record contains inconsistent or conflicting summary judgment proof. *Salazar v. Ramos*, 361 S.W.3d 739, 746 (Tex.App. – El Paso 2012, pet. denied). In determining whether there are disputed issues of material fact, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985); *E.B.S. Enterprises, Inc.*, 347 S.W.3d at 407.

When the trial court does not state the basis for granting summary judgment, the appealing party must negate on appeal all possible grounds that could form the basis of that ruling. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995); *State Farm Fire & Cas. Co. v. S.S. & G.W.*, 858 S.W.2d 374, 381 (Tex. 1993); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Melendez v. Padilla*, 304 S.W.3d 850, 853 (Tex.App. – El Paso 2010, no pet.). If the appealing party fails to negate each ground on which the trial court may have rendered summary judgment, we must uphold the summary judgment. *See Carr*, 776 S.W.2d at 569; *Melendez*, 304 S.W.3d at 853-54.

7

*Summary Judgment Evidence*

Wells Fargo's summary judgment evidence included Roberts' testimony from an injunction hearing. At the hearing, Roberts testified that she went to a Wells Fargo Home Mortgage office and spoke with the receptionist, Lorraine, and a manager who spoke by phone with their customer service department regarding the processing of the insurance proceeds check. Roberts was advised to submit the check and other necessary papers and payment would be disbursed in three payments to the roofing contractor. Roberts called Wells Fargo after submitting the documents, confirmed that Wells Fargo had received her documents, and was then advised that the funds were being held and would not be released. After contacting the mortgage department as advised, Roberts provided updated financial and income information, including her unemployment benefits, and was advised that she was ineligible for repayment options. According to Roberts, Wells Fargo advised her to call the "loss draft department" and have the insurance money sent directly to the contractor. The "loss draft department" advised Roberts that no funds would be distributed to Roberts or her contractor and informed her that the funds being held would probably be applied to her delinquent payments. Roberts later received a letter from Wells Fargo that assumed that funds had been paid to a roofing contractor. Acknowledging that she was delinquent on her house payments, that the mortgage was in default, that she had tried unsuccessfully to refinance her home, and that her notarized signature was on the deed of trust containing the election-of-options language, Roberts testified that Wells Fargo had determined that because her payments had been in arrears, it would apply the insurance proceeds to her debt. According to Roberts, at the time of the injunction hearing in June 2011, she owed approximately $85,000 on the home.

In support of her response to the motion for partial summary judgment, Roberts offered a portion of the deposition testimony of Wells Fargo's default litigation specialist and business records custodian, Mary Ellen Brust. In her deposition, Brust noted that Wells Fargo has different divisions, including banks and home mortgage servicing centers. Brust noted that the first individuals with whom Roberts made contact regarding the insurance proceeds check work for Wells Fargo's bank division. Brust confirmed that records showed its customer service department had advised Lorraine Viscon, the person to whom Roberts had spoken about obtaining payment for repair of the roof, that the normal procedure in such circumstances is that the insurance check, the repair estimate, and the contractor's bid are all submitted to Wells Fargo, which deposits the funds, reviews the documents, and typically releases funds to the contractor in three draws. Brust testified that its guidelines require that a mortgagor who is making a hazard claim be informed that the insurance funds are deposited into an escrow account, and that Roberts was so informed on October 22, 2010. However, Brust explained that when a loan is not current, the Default Department is notified and the guidelines require that a mortgagor be actively repaying before "the process can begin."

On October 26, 2010, Roberts had submitted all necessary documents to Wells Fargo. The check endorsed by Roberts was received and subsequently sent to Wells Fargo's property preservation section and, because the property was already in foreclosure, the foreclosure department was contacted. The foreclosure department directed that the funds be held. Brust testified that Roberts' loan met the criteria for default which barred Ms. Roberts from hiring someone to perform repairs unless she had achieved a repayment status. According to Wells Fargo records, when Roberts called on October 26, 2010, to have the funds released to her roofer,

she was advised that because her account was delinquent, she needed to be placed on a repayment plan. Brust agreed that its records showed that Roberts was unable to afford a repayment agreement or other "retention" options.

Brust acknowledged that records showed that Wells Fargo had contacted Roberts in November 2010, and that Roberts had advised both that she had been unable to achieve a repayment status and that Wells Fargo should contact her attorney. Brust was asked about a follow-up letter issued on December 23, 2010, to Roberts regarding her claim for repairs. Brust explained that the follow-up letter may have simply been a "next task" of a claim representative and that it would have been normal to send a mortgagor such letter to determine whether repairs had been completed. Wells Fargo records show that it received a deposit of $10,819.31 on Roberts' account on October 26, 2010.

*Analysis*

Roberts contends that Wells Fargo failed to timely elect to apply the insurance proceeds to her indebtedness and that Wells Fargo's follow-up letter to her in December 2010, in which it inquired about the progress of the roof repairs, is additional evidence that Wells Fargo equivocated about its electing its option regarding the insurance proceeds. Roberts argued that Wells Fargo had failed to make a single, timely election regarding the application of the insurance proceeds as required under the deed of trust.

In *Statewide Bank and SN Servicing Corp. v. Keith*, 301 S.W.3d 776, 781-83 (Tex.App. – Beaumont 2009, pet. abated), which involved a challenge to the factual sufficiency of the evidence to support the jury's verdict in favor of the mortgagor, the appellate court recognized that the short time limits set forth in the Texas Insurance Code "demonstrate that parties to similar option

10

agreements reasonably expect the mortgagee to act to make a decision on utilizing the insurance proceeds fairly quickly," and held that a mortgagee's seven-month delay after receiving insurance proceeds and attempting to elect to repair property under a deed of trust supported the jury's conclusion that the mortgagee had failed to timely make an election under a deed of trust and had breached its obligations thereunder. *See Statewide Bank*, 301 S.W.3d at 782, 784-85 (noting that "time is of the essence" with respect to agreements that create options).

Roberts was initially advised that Wells Fargo would distribute proceeds to a roofing contractor and, four days later, because of the delinquency of Roberts' loan payments, Wells Fargo informed Roberts that the proceeds would not be released and would be kept in an account and applied to the amounts due under the loan. Moreover, Roberts concedes in her brief that Wells Fargo "changed its mind a few days later . . . ." We conclude that Wells Fargo's four-day election of its option under the deed of trust is not untimely.

Moreover, we are persuaded by Wells Fargo's contentions below and on appeal that it could not have committed conversion, breach of contract, or fraud because it was contractually, rightfully, and lawfully entitled to the insurance proceeds under the terms of the deed of trust and had applied such proceeds consistent with the deed of trust.

In *English v. Fischer*, 660 S.W.2d 521, 522-23 (Tex. 1983), a deed of trust which secured a promissory note on a house and lot included a provision covering the disbursement of insurance proceeds in the event of damage to the property. The deed of trust provided that the purchasers "shall keep said property fully insured in some company or companies approved by the holder of said indebtedness [seller], to whom the loss, if any, shall be payable and by whom the policy shall be kept." *Id*. When the house was partially destroyed by fire, the purchasers asked the seller to

endorse the insurance proceeds check to them to permit them to rebuild the house. *Id.* at 522. The seller verbally agreed to endorse the check but later decided against that course of action. *Id.* The Texas Supreme Court held that the parties specifically contracted for the disbursement of proceeds of the fire insurance and that the seller was entitled to apply such proceeds to the indebtedness and pay any remaining proceeds to the purchasers. *Id.* at 523.

In *Lewis v. Wells Fargo Home Mortg., Inc.*, 248 S.W.3d 828, 830-31 (Tex.App. – Texarkana 2008, no pet.), a deed of trust provided that the mortgagor was to insure the premises, that the insurance proceeds would be paid to Wells Fargo as mortgagee which, at its option could apply the proceeds in whole or part to the reduction of indebtedness existing under the note or to the restoration or repair of the damaged property. *Id.* at 830. The home burned down. *Id.* at 828. In that case, Wells Fargo opted to apply the insurance proceeds to the construction of a house on the remaining foundation. *Id.* at 829. The mortgagor complained that Wells Fargo improperly applied the insurance proceeds because it did not repair or restore the house. *Id.* at 831. In conducting its analysis, the *Lewis* court discussed the facts of *Zidell v. John Hancock Mut. Life Ins. Co.*, 539 S.W.2d 162 (Tex.Civ.App. – Dallas 1976, writ ref'd n.r.e.), wherein a security instrument provided that loss proceeds would be paid to John Hancock which had the option, among others, to apply those proceeds to the indebtedness of Zidell or to the restoration of the property. *Lewis*, 248 S.W.3d at 830; *Zidell*, 539 S.W.2d at 165. The *Zidell* court, noting that it knew of no public policy reason that would bar an agreement that permitted a mortgagee to apply insurance proceeds to indebtedness, "even when the property has been restored at the mortgagor's expense," held that John Hancock's application of the insurance proceeds to the debt was proper. *Zidell*, 539 S.W.2d at 165. The *Lewis* court recognized that the distinction between the facts in

12

that case and those in *Zidell* was simply the election to apply the insurance proceeds either to the restoration of the building or to the indebtedness of the mortgagor. *Lewis*, 248 S.W.3d at 830. The *Lewis* court concluded that, "[the] principle involved is the same: the contract of the parties authorized the mortgagee to make that election [and having] that contractual right, it is not the prerogative of Lewis or this Court to require the mortgagee to apply the insurance proceeds to the debt." *Id*. at 830-31.

Under the terms of the deed of trust, Wells Fargo was permitted to elect to apply the insurance proceeds to the reduction of Roberts' indebtedness with application made first to any delinquent amounts and then to prepayment of principal. Because the trial court did not state its basis for granting partial summary judgment, Roberts was required to negate all possible grounds that could form the basis for the trial court's partial summary judgment. *Melendez*, 304 S.W.3d at 853. Because she has failed to do so, and because there is no genuine issue of material fact, Issue Two is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

GUADALUPE RIVERA, Justice

June 20, 2013

Before McClure, C.J., Rivera, and Rodriguez, JJ.

13